**In re BLACK & GEDDES, INC., Debtor.**

**ASSOCIATED CONTAINER TRANS-PORTATION (AUSTRALIA) LTD. and Pace Line, Plaintiffs-Appellants,**

**v.**

**BLACK & GEDDES, INC. and Chester B. Salomon, Trustee, Defendants-Appellees.**

**Nos. 81 B 10399 (PBA), 83 Civ. 5687 (WCC).**

United States District Court, S.D. New York.

Nov. 29, 1983.

As Amended Nov. 30, 1983.

Burlingham Underwood & Lord, New York City, for plaintiffs-appellants; Wade S. Hooker, of counsel.

Chester B. Salomon, P.C., New York City, for defendants-appellees.

WILLIAM C. CONNER, District Judge.

Plaintiffs-appellants ("plaintiffs") Associated Container Transportation (Australia) Ltd. and Pace Line instituted a proceeding in the United States Bankruptcy Court on March 31, 1983, seeking to impose a constructive trust upon funds in the hands of defendant-appellee ("defendant") Chester B. Salomon, who was acting as Trustee in Bankruptcy for defendant Black and Geddes, Inc. ("B & G"). Defendants moved to dismiss the claim as untimely and submitted with their motion an affidavit incorporating documentary exhibits. Plaintiffs submitted responsive papers and, following a hearing, Bankruptcy Judge Prudence Abram granted summary judgment in favor of defendants, 30 B.R. 389. Plaintiffs now seek review of the bankruptcy judge's determination, citing as error: (1) the judge's failure to give them proper notice of her intent to treat the motion as one for summary judgment; and (2) the judge's conclusion that the claim should be disallowed because it was untimely. For the reasons set forth below, the decision of the bankruptcy judge will be affirmed.

*Background*

Associated Container Transportation (Australia) Ltd., acting as a general agent for Pace Line, is an oceangoing common carrier. During late 1980 and early 1981, Black and Geddes, a freight forwarder, arranged for plaintiffs to transport cargo for various shippers, each arrangement being reflected in a duly prepared bill of lading. Following transport and delivery of the goods, plaintiffs billed B & G for freight charges totalling over $46,000. B & G apparently collected the freight charges

from the shippers involved, but then failed to pay these sums over to plaintiffs.

On February 23, 1981, B & G filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. On April 29, 1981, plaintiffs filed a general unsecured claim against the bankruptcy estate, based upon the abovementioned transactions. The case was converted to a Chapter 7 liquidation on May 27, 1981 and the Trustee was appointed. Notice was sent to all interested parties indicating that a first meeting of creditors would be held on June 29, 1981, and that December 29, 1981 had been set as the last day for filing claims against the debtor's estate.

Prior to the expiration of the claims period, the Trustee applied for an allowance of interim compensation for work performed by accountants and attorneys under the Chapter 11 proceeding. Bankruptcy Judge Roy Babbitt denied compensation at that time because the value of assets in the estate and the status of various creditors remained unsettled. In May of 1982, after the claims period had expired, Judge Babbitt reconsidered and granted this application, as well as an application for interim compensation for the Chapter 7 professionals, based upon his determination that the estate contained sufficient funds to pay all post-petition creditors. Judge Babbitt subsequently approved a distribution to employees of the debtor, noting in his Order that there were sufficient funds in the estate to satisfy the claims of all priority creditors. Plaintiffs were notified of these distributions and raised no objections.

On March 31, 1983, fifteen months after the time for asserting claims against the estate had expired, plaintiffs filed a complaint in the Bankruptcy Court against the Trustee and B & G. The complaint was based upon the same transactions that underlay the unsecured claim filed earlier; however, it did not merely reallege the existence of a simple debt. Instead, it alleged that a constructive trust existed over those sums which represented freight charges paid to B & G for plaintiffs' account. Under this new theory, plaintiffs asserted an entitlement to the entire amount of the freight charges owed them, rather than a pro rata share of any funds remaining for unsecured creditors of the bankruptcy estate.

In lieu of answering plaintiffs' complaint, defendants filed notice of a motion to dismiss "pursuant to Rule 712 of the Rules of Bankruptcy and Rule 12(b)(6) of the Federal Rules of Civil Procedure." The notice was accompanied by a supporting affidavit, seven attached exhibits and a memorandum of law. The exhibits included, *inter alia*, a transcript of the hearing at which Judge Babbitt denied interim compensation for the Chapter 11 professionals and copies of Judge Babbitt's subsequent Orders authorizing distributions from the estate. The thrust of defendants' argument was that Judge Babbitt had already made distributions from the bankruptcy estate in reliance on the Trustee's calculations of assets available, and that the creditors would be prejudiced if plaintiffs' untimely claim were permitted.

On May 16, 1983, plaintiffs filed an affidavit and a memorandum of law opposing defendants' motion, in which they argued that their assertion of a constructive trust was not a "claim" within the meaning of the Bankruptcy Code and therefore was not untimely. Plaintiffs argued, alternatively, that the Bankruptcy Court should permit an amendment to their earlier claim because defendants' contention respecting prejudice to the creditors was unsupported. Neither defendants' motion papers nor plaintiffs' responsive papers addressed whether a constructive trust could be proven; plaintiffs' allegations were accepted as true for purposes of the motion.

On the same day that plaintiffs filed their responsive papers, Judge Abram held a hearing on the motion. At the hearing, the judge did not expressly assert her intention to consider defendants' affidavit and exhibits, or to convert the motion to dismiss to one for summary judgment under Rules 12(b) and 56 of the Federal Rules of Civil Procedure. However, the judge and counsel focused their discussions on

the issues of timeliness and prejudice addressed in the parties' submissions, and they made reference to the affidavits and exhibits.

Prior to the conclusion of the hearing, the judge inquired of defendants' counsel how much money remained in the bankruptcy estate. Counsel replied that "theoretically, there would be sufficient funds" in the estate to pay plaintiffs' claim, were it to prevail. Additional argument followed, and the judge then indicated she would consider the matter submitted. Several weeks later, she issued a Decision and Order.

The bankruptcy judge determined that because matters outside the complaint had been submitted without objection, both parties had addressed the legal issue, and there were no essential facts in dispute, the motion would be treated as one for summary judgment. She went on to conclude that in order to effectuate the policy of closing bankruptcy estates as expeditiously as possible, it was necessary for plaintiffs to assert their claim for a constructive trust "not later than the date the Trustee [made] his first distribution from the estate to creditors and thereby [changed] his position in reliance on ... the claims as filed." She also concluded, with little explanation, that plaintiffs should not be permitted to amend their proof of claim because prejudice would result. From these determinations, plaintiffs appeal.

*Discussion*

Plaintiffs' first contention is that the bankruptcy judge erred in failing to give them notice of her intention to treat defendants' motion to dismiss as a motion for summary judgment. I agree that conversion of a Rule 12(b)(6) motion should generally be preceded by notice to the parties; however, I cannot conclude that the judge's failure to provide express notice mandates reversal in this case.

Rule 12(b) provides in relevant part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The Court of Appeals for the Second Circuit has construed this provision to incorporate the notice period set forth in Rule 56(c), which states that motions for summary judgment "shall be served at least ten days before the time fixed for the hearing." *In re Bristol Industries Corp.*, 690 F.2d 26 (2d Cir.1982). Accordingly, a trial judge should afford the parties ten days' notice of his intent to convert a motion to dismiss to one for summary judgment. *Id.* at 28. Nonetheless, these rules have been applied with some flexibility, and with a view toward underlying policies.

The procedures set forth above assure that the parties will not be unfairly surprised, and that genuine issues of material fact will be brought to the trial court's attention. In short, they guard against entry of a summary judgment without due process. Compliance with the applicable time periods is thus not an end in itself, and a reviewing court must examine whether the party against whom summary judgment was granted did, indeed, have a reasonable opportunity to present its views and all materials pertinent to the dispositive issue. *See, e.g.,* 6 Moore's Federal Practice ¶ 56.02[3] at 56–33 n. 20 (citing cases).

Conversion of a Rule 12(b)(6) motion without prior notice to the parties was upheld, for example, in *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981). The court concluded that where no material issues of fact appeared in the record, and where the defendant had not alleged specific disputed factual issues in its brief on appeal, summary judgment would not be disturbed even though the

district court disregarded the procedures it should have followed. *Id.* at 391. In *Dayco Corp. v. Goodyear Tire and Rubber Co.*, 523 F.2d 389 (6th Cir.1975), the court of appeals also upheld a district court's unheralded granting of summary judgment over the plaintiff's complaint of unfair surprise. The court noted that the plaintiff had made no efforts to exclude the defendants' affidavits, but had, instead, responded with its own. The court ruled that, under those circumstances, providing the parties with notice that the motion would be treated as one for summary judgment "would merely have informed them of what they should already have known." *Id.* at 393.

The Second Circuit's opinion in *Bristol, supra,* cited by plaintiffs in the instant case, does not conflict with these authorities. In *Bristol,* the plaintiff commenced a proceeding in the bankruptcy court to obtain preliminary and permanent injunctions against the defendant debtor. A preliminary injunction hearing was held, after which the defendant moved to dismiss the action. Following further hearings on the propriety of preliminary injunctive relief, the defendant filed a memorandum containing a request that the court convert the motion to dismiss to a motion for summary judgment. The bankruptcy court complied with this request on grounds that it had considered matters outside the pleadings, and it granted summary judgment for the defendants without notice to the parties. On appeal, the Second Circuit reversed.

The court of appeals recognized that some courts had employed a harmless error analysis rather than requiring strict compliance with the notice requirements of Rule 56. The court saw no need to adopt or reject that approach, however, because it found that the plaintiffs had been prejudiced by the bankruptcy court's action. 690 F.2d at 29. The court referred to the *Dayco* decision, but found it inapposite because the materials presented to the trial court in *Dayco* related directly to the mo-

tion to dismiss, while the evidence presented to the bankruptcy court in *Bristol* related to the motion for preliminary injunction. In addition, the court found it significant that the bankruptcy judge had expressed his intention to consider matters outside the pleadings only in connection with the preliminary injunction. In view of these circumstances, the court of appeals was unable to conclude that the plaintiff should have known the motion would be converted. *Id.* Finally, the court commented that the bankruptcy judge should have realized there were factual issues to be developed. Those factual issues were specified by counsel on appeal.

The situation presented in the instant case stands in marked contrast to that in *Bristol.* Defendant's motion to dismiss, filed ten days prior to the hearing conducted by the bankruptcy judge and accompanied by an affidavit and exhibits containing significant factual allegations, raised only one basic legal issue: Whether plaintiffs' claim for imposition of a constructive trust should be disallowed because it was untimely and therefore prejudicial to the other creditors and to administration of the bankruptcy estate. Plaintiffs' responsive affidavit, filed on the day of the hearing, was directed to precisely this issue.

At the hearing, defendants' counsel addressed the issue of prejudice caused by plaintiffs' untimely assertion of their claim. She relied primarily on the fact that the Trustee had made distributions in reliance on the duly filed claims; these distributions were reflected in the exhibits submitted with the motion. Plaintiffs' counsel made no objection to these arguments, and in turn he responded with the contention that defendants had failed to demonstrate prejudice sufficient to foreclose an amendment of the concededly timely unsecured claim. In support of his position, he cited a statement by defendants' counsel that the bankruptcy estate contained sufficient funds to pay his claim. Obviously, this statement constituted "matter outside the pleadings."

In converting defendants' Rule 12(b)(6) motion to a summary judgment motion, the bankruptcy judge acknowledged the Opinion of the Second Circuit in the *Bristol* case. She nonetheless concluded that because both parties had adequately addressed the legal issue, because there was no objection to her accepting matters outside the pleadings, and because all the essential facts were matters of record, plaintiffs were not prejudiced by her action. In light of the authorities discussed above, I must agree. The record discloses no unresolved material factual issues, and although plaintiffs suggest that factual disputes remain, they have failed to specify what these disputes might be.[1] This is a situation very much like that presented in *Dayco*, where notice that the motion would be treated as one for summary judgment could only have informed the parties of what they should already have known. For all of these reasons, I concur with the bankruptcy judge's conclusion that plaintiffs were not prejudiced by her treatment of the motion as one for summary judgment.

Plaintiffs' second contention is that the bankruptcy judge erred in refusing to allow them to maintain a cause of action for a constructive trust after distributions had been made by the Trustee. They argue, in the alternative, that the judge should have permitted them to amend their timely proof of claim. I cannot agree.

As an initial matter, I address plaintiffs' suggestion that by seeking to impose a constructive trust upon funds in the hands of the Trustee, they were not asserting a "claim" within the meaning of the Bankruptcy Code, and their action was, therefore, not untimely. Putting aside the very obvious havoc that would result if constructive trust claims could be raised without regard to any established limitations period, I look to the statutory definition of the term "claim" and to the accompanying committee notes. According to 11 U.S.C. § 101(4) of the Code, "claim" includes any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, legal, equitable, secured or unsecured. The notes of the Committee on the Judiciary, Senate Report No. 95–989, U.S. Code Cong. & Admin.News 1978, p. 5787 indicate that "by this broadest possible definition ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." Based upon these provisions, I can only conclude that Congress intended that constructive trust claims be asserted within the period fixed for asserting all other claims against the bankruptcy estate.

Rule 302(e) of the Federal Rules of Bankruptcy Procedure provides, with certain exceptions not relevant here, that in a Chapter 7 proceeding creditors must file their claims within six months after the date set for the first meeting of creditors.[2] In this case, the six-month period expired on December 29, 1981. This six-month requirement is in the nature of a statute of limitations, 2 Collier Bankruptcy Manual ¶ 501.06 (3d ed. 1983), and it embodies such concerns as repose and certainty, as well as the special policy of expedient disposition

---

1. There was some discussion at the hearing of difficulties plaintiffs would face in proving the existence of a constructive trust were the claim allowed. In that context, plaintiffs' attorney stated, "This is a motion to dismiss, Your Honor, and we don't have the facts yet. In fact, the facts are in the hands of the defendant and we would certainly be seeking discovery." (Tr. at 10). Had the bankruptcy court granted summary judgment for defendants on the issue of whether there was indeed a constructive trust,

that action would surely have been inappropriate. The parties understood, however, that the issue at hand was whether, assuming there was a constructive trust, the claim should be barred as untimely.

2. This provision has since been superseded by Rule 3002(c), effective August 1, 1983, which reduced the claims period from six months to 90 days.

which is central to the efficient and just management of bankruptcy affairs.

It is well established that the bankruptcy court has power to allow the amendment of a defectively filed proof of claim, even after expiration of the statutory filing period. *In re Gibraltor Amusements, Ltd.*, 315 F.2d 210, 213 (2d Cir.1963), *citing Hutchinson v. Otis, Wilcox & Co.*, 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179 (1903). However, the propriety of permitting an amendment to any particular claim is an issue traditionally residing within the sound discretion of the bankruptcy judge.[3] *See, e.g., In re Futuronics Corp.*, 23 B.R. 281 (S.D.N.Y. 1982); *In re Lanman*, 24 B.R. 741, 743 (Bktcy.Ct., N.D.Ill.1982) ("Bankruptcy Courts may and should use discretion in allowing proofs of claim to be amended after the time for filing the claims has elapsed.").

A two-pronged inquiry has been developed to guide bankruptcy courts in the exercise of their discretion. A court should look first to whether there was timely assertion of a similar claim or demand evidencing an intention to hold the estate liable. Generally speaking, an amendment will not be permitted if it amounts to an attempt to file an entirely new claim. *Matter of Commonwealth Corp.*, 617 F.2d 415, 420 (5th Cir.1980). The court should also examine all of the facts of the particular case, and determine whether it would be equitable to allow the amendment. *In re Alsted Automotive Warehouse, Inc.*, 16 B.R. 924, 925 (Bktcy. Ct.E.D.N.Y.1982); *In re Lanman, supra*, 24 B.R. at 743. Particularly significant to the latter inquiry are determinations of whether other claimants might be prejudiced by the amendment, *see In re Alsted, supra*, 16 B.R. at 926, and whether there is some justification for the movant's failure to file a proper claim within the limitations

period. *See, In re Lanman, supra*, 24 B.R. at 743–744; *In re Meade Tool and Die Co.*, 164 F.2d 228 (6th Cir.1947) (Court allowed unsecured claim to be amended to reflect security interest where, *inter alia*, attorney who filed proof of claim was blind and unaware that proof of claim form indicated there was no security, and creditor relied on attorney because creditor had limited ability to read and understand English).

The bankruptcy judge in the instant case did not discuss the two-pronged analysis described above, but did conclude that allowing plaintiffs to proceed with their claim would be prejudicial to the expeditious administration of the bankruptcy estate. In light of representations that there remained in the estate sufficient funds to pay plaintiffs' claim in full, my task would have been simplified had the bankruptcy judge set forth with greater specificity the factors upon which she rested her decision. Nevertheless, a review of the record reveals an adequate basis for this determination, and I am disinclined to interfere with the decision of the bankruptcy judge, who is, by virtue of her position, uniquely attuned to the special problems of bankruptcy administration.

I agree with the bankruptcy judge that a trustee must, at some point, be able to ascertain definitively the value of the bankruptcy estate and the extent of claims against it. In approving claims and distributions, trustees and judges should not feel hindered by nagging suspicions that latent claims could materialize at any time prior to a final pro rata distribution to unsecured creditors. Plaintiffs' protests notwithstanding, certainty and finality are legitimate concerns of the bankruptcy court; for this reason, the fact that all of the administrative and secured claims, as

---

**3.** I am mindful that under Emergency Bankruptcy Rule 1(e)(2)(B), put in effect in this district as a result of the United States Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), I am not

required to give any deference to the findings of the bankruptcy judge. However, I believe that it is appropriate to defer to the bankruptcy judge on an issue such as this, where a key consideration is the effect of a party's delay on the administration of bankruptcy proceedings.

well as plaintiffs' claim, could "theoretically" be paid in full is not dispositive.

In addition, when Judge Babbitt approved distributions from the estate and when the Trustee informed the bankruptcy judge that "theoretically" there were sufficient funds to pay plaintiffs' claim in full, they did not account for legal expenses that would be incurred in defending against that claim. Mention was made at the hearing of significant tracing problems that would confront plaintiffs at a trial on the merits. Although the Court assumes for present purposes that plaintiffs adequately alleged a cause of action, it need not and cannot assume that plaintiffs would ultimately prevail without extended and costly litigation. Thus, the potential for prejudice to the priority creditors due to these previously unanticipated expenses is very real.

I note, finally, that the record discloses absolutely no justification for plaintiffs' failure to file their constructive trust claim within the six-month limitations period. I would not accord dispositive significance to this factor standing alone, but I believe it is relevant to a determination of the relative equities.

Plaintiffs' interest in recovering 100% of the sums allegedly owed them by defendants is significant and undeniable. Nonetheless, for the reasons set forth above, I defer to the discretion of the bankruptcy judge, and conclude that plaintiffs' claim should not be permitted. The judgment of the bankruptcy court is therefore affirmed.

SO ORDERED.