In re **INTEGRATED RESOURCES, INC., Debtor.**

**INTEGRATED RESOURCES, INC., Appellant,**

v.

**AMERITRUST COMPANY NATIONAL ASSOCIATION; Bank Brussels Lambert; the Chase Manhattan Bank, N.A.; Chemical Bank of New York; Connecticut Bank & Trust Company; Credit Lyonnais New York Branch; First Interstate Bank of California; Homefed Bank; Midland Bank, PLC; Morgan Guaranty Trust Company of New York; National Westminster Bank, USA; Norstar Bank; Security Pacific National Bank; and Signet Bank/Virginia, Appellees.**

Nos. 92 Civ. 7667 (CSH), 92 Civ. 7668 (CSH).

United States District Court, S.D. New York.

July 9, 1993.

---

**29.** *Datlof v. Turetsky*, 111 A.D.2d 364, 489 N.Y.S.2d 353, 355 (1985) and cases cited therein.

**30.** *Datlof, supra.*

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Integrated Resources, Inc., ("Integrated"), the debtor in this Chapter 11 proceeding, appeals from a decision of the Bankruptcy Court of the Southern District of New York, (Blackshear, J.) denying its motion to dismiss counterclaims pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated by Bankruptcy Rule 7012.

### BACKGROUND

Integrated Resources, Inc. is primarily a holding company that owns operating companies in the financial services field. Integrated had been engaged in the sale of direct participation investment programs which were syndicated in the form of privately-offered limited partnership interests. One such program was Fillmore Center Associates ("FCA"), which was syndicated in 1987. FCA's purpose was to own, develop and operate the largest residential housing project in San Francisco called Fillmore Center. Fillmore Pacific Associates ("FPA") was also syndicated by Integrated along with two Integrated subsidiaries; Resources Funding Corp. ("RFC") and Commercial Integrated Finance Company ("CIFC"). Each of these entities was involved with the Fillmore project.

Construction of the Fillmore Center was to be financed primarily by a $93 million line of credit to FCA from Citicorp Real Estate, Inc. ("CREI"), as well as from the proceeds of a bond sale. In the fall of 1988, in response to announced cost overruns on the project, CREI demanded that FCA deposit additional funds in its construction account to obtain additional advances on CREI's line of credit. To satisfy CREI's demands, FCA, FPA and RFC obtained lines or letters of credit from appellees who are all banks or financial institutions. Subsequently, CIFC obtained a line of credit to provide funding for the Fillmore project. Between October 1988 and June 1989, Integrated executed guaranties for almost all of those obligations.

In or about June 1989, Integrated declared a moratorium on the payment of substantially all of its debt. All of the lines or letters of credit concerning Fillmore were drawn down in whole or in part. Appellees made demands on FCA, FPA, RFC, and CIFC, as applicable, for payment of their obligations to appellees, but the obligations have not been paid.

On February 13, 1990, Integrated filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By order, dated June 22, 1990, the Bankruptcy Court fixed September 12, 1990, as the Bar Date by which all persons and entities wishing to assert claims against Integrated must file proofs of claim. (Appellants Br.Supp. at 9.)

The 12(b)(6) motion arose in a fraudulent transfer action commenced by Integrated against appellees in August 1991. In the action, Integrated seeks to avoid (i.e. eliminate), on behalf of its creditor bodies as a whole, more than $70 million of guaranties (the "Fillmore Guaranties") executed by Integrated respecting letters of credit and other credit extensions by appellees. (Appellants Br.Supp. at 2.) Integrated commenced the adversary proceeding seeking a declaratory judgment that the Fillmore Guaranties were fraudulent transfers, voidable under sections 544 and 548 of the Bankruptcy Code. *Id.* at 6. Integrated alleges that at the time it entered into the Fillmore Guaranties, Integrated: (a) was insolvent; (b) became insolvent due to the guaranties; or (c) was engaged in a business for which any property remaining with Integrated was an unreasonably small capital. Integrated also alleges it did not receive fair consideration or reasonably equivalent value in exchange for the Fillmore Guaranties. *Id.* at 6.

Appellees contend the Fillmore Guaranties are not fraudulent transfers. The appellees answered and asserted counter-

claims and purported amendments to their proofs of claim against Integrated. The counterclaims assert that if the Fillmore Guaranties are avoided as fraudulent transfers, then appellees are entitled to damage claims against Integrated because Integrated wrongfully induced appellees to enter into the Fillmore Guaranties by misrepresenting Integrated's financial condition. *Id.*

In its motion, Integrated sought dismissal of the counterclaims, arguing that the counterclaims: (a) are late claims filed more than one year after the court-ordered bar date in Integrated's chapter 11 case (the "Bar Date"), despite appellees' actual knowledge of Integrated's fraudulent transfer claims more than one year prior to the Bar Date; (b) are not permissible amendments to appellees' timely-filed proofs of claim (the "Original Claims") because, the Original Claims did not provide Integrated with any notice of the fraud claims asserted by appellees in the counterclaims; and (c) are impermissible attempts to defeat Integrated's fraudulent transfer action.

By Order dated July 30, 1992, the Bankruptcy Court denied Integrated's Motion, holding that it was proper to allow the counterclaims (and the amended bankruptcy claims on which they were based). The Court concluded that "the defendant banks' counterclaims arise out of the very transaction which Integrated is attempting to avoid." Bankruptcy Court Transcript (Blackshear, J.) at Tr. 10–11. The Court further held the claims to be "proper, timely, and to relate back to the original Proofs of Claim filed by the Defendant banks." *Id.* at 14. Integrated appeals.

## DISCUSSION

### Jurisdiction

■ The appellees have made a motion to dismiss this appeal due to lack of jurisdiction. They argue that "an order denying a motion under Rule 12(b)(6) to dismiss a pleading is a textbook example of a non-final, interlocutory order," and that the "non-appealable nature of such orders is universally recognized." (Mem. Supp. Mot. Dismiss Appeal at 5.)

Despite the interlocutory nature of an order denying a motion to dismiss, it is settled law that if a bankruptcy court certifies an order pursuant to Bankruptcy Rule 7054 and Fed.R.Civ.P. 54(b), the order becomes final for purposes of appeal. *See, e.g., In re Chateaugay Corp.*, 945 F.2d 1205, 1206 (2d Cir.1991) (bankruptcy court orders were certified pursuant to Bankruptcy Rule 7054(a) and Fed.R.Civ.P. 54(b) and are thus final within the meaning of 28 U.S.C. § 158(d)); *In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir.1990) (finality problem of interlocutory appeal may be cured if district court follows the Rule 54(b) procedure for entry of final judgment on the particular matters appealed; Bankr.R. 7054(a) affords bankruptcy court same procedural mechanism available to the district court under Rule 54(b)); *Matter of Wood and Locker, Inc.*, 868 F.2d 139, 143 (5th Cir.1989) (applicability of Rule 54(b) to adversary proceedings affects the finality of the bankruptcy court's order).

The Bankruptcy Court certified the Order as "a final judgment on the Motion pursuant to Rule 7054(a) of the Federal Rules of Bankruptcy Procedure and Rule 54(b) of the Federal Rules of Civil Procedure for purposes of appeal to the district court pursuant to 28 U.S.C. § 158(a)." Accordingly, it is considered final for purposes of this action and this Court has jurisdiction to decide Integrated's appeal.

### Standard of Appellate Review

■ The Bankruptcy Court rejected Integrated's argument that the appellee's post bar date amendments be rejected under a standard of strict scrutiny. The bankruptcy judge was correct in the assertion that the decision to grant or deny an amendment to a timely filed proof of claim rests within the sound discretion of the bankruptcy judge. *See, e.g., In re McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y.1990) ("It is well-settled that the decision to permit an amendment of a proof of claim rests within the sound discretion of the bankruptcy judge."); *In re Black & Geddes, Inc.*, 58 B.R. 547, 553 (Bankr.

S.D.N.Y.1983) ("[T]he propriety of permitting an amendment to any particular claim is an issue traditionally residing within the sound discretion of the bankruptcy judge."); *In re Am Intern., Inc.,* 67 B.R. 79, 81 (N.D.Ill.1986) (decision to grant or deny amendment to proof of claim is within bankruptcy judge's discretion).

This Court reviews the Bankruptcy Court's decision under an abuse of discretion standard. *See, e.g., In re Intern. Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir. 1985) ("because the allowance or denial of an amended proof of claim is discretionary, this Court will review the bankruptcy court's decision under an abuse of discretion standard"), *cited in In Re Norris Grain Co.,* 131 B.R. 747 (M.D.Fla.1990).

■ Principles of equity guide a bankruptcy court's determinations to insure that "fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *See, e.g., Intern Horizons, supra,* at 1216, *quoting Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). Thus, in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim. *See, e.g., Intern Horizons, supra,* at 1216; *In re White Motor Corp.,* 59 B.R. 286, 288 (Bkrtcy.N.D.Ohio 1986). However, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment. *Intern Horizons, supra,* at 1216, *citing In the Matter of Commonwealth Corp.,* 617 F.2d 415, 420 (5th Cir.1980) (amendment not permitted as guise for filing an untimely claim); *Am Intern, supra,* at 81 ("Amendments to proofs of claim filed after the bar date in bankruptcy cases are scrutinized closely to ensure that the amendment is

genuine rather than an assertion of an entirely new claim.").

■ When making this decision courts are guided by a two-pronged test espoused in *Black & Geddes.* A court must "first look to whether there was timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *Black & Geddes, Inc., supra,* at 553 (citations omitted). The court should then examine each fact within the case and determine whether it would be equitable to allow the amendment. *Id.*

When balancing the equities, important factors include:

(1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*See McLean Industries, supra,* at 708.

■ "While Federal Rule 15 which governs amendment to pleadings is not directly applicable to claims proceedings under Bankruptcy Rule 9014, the determination regarding amendment parallels considerations under that rule.[1] The critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *White Motor, supra,* at 289. "Ordinarily, to be within the scope of a permissible amendment, the second claim should not only be of the same nature as the first but also reasonably within the amount to which the first claim provided notice." *Am Intern, supra,* at 82. "The test under Rule 15 is basically the same as that developed in the case law for amending claims in bankruptcy; the original pleadings must give notice of the transaction or occurrence giving rise to the plaintiff's cause of action in the amended pleading and the amendment must not substantially prejudice the

---

**1.** Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading *arose out of*

*the conduct, transaction, or occurrence* set forth or attempted to be set forth in the original pleading. . . . Fed.R.Civ.P. 15(c)(2) (adopted in Bankruptcy Rule 7015).

opposing party." *McLean Industries, supra,* at 710.

### Amendment of the Proof of Claim

██ The Original Claim provided the appellants with knowledge that appellee banks intended to hold Integrated liable for the loans and other debts allegedly "induced" by Integrated's guaranties and other promises. (Appellees Br. at 19–20.) The counterclaims seek affirmative recoveries from Integrated based on allegations that Integrated fraudulently induced the appellees to enter into the Fillmore Guaranties. *See, e.g.,* Answer and Counterclaim of appellee Chemical Bank, dated April 20, 1992 at ¶¶ 85–86.

The appellant takes issue with the Bankruptcy Court's decision to allow such an amendment by asserting that the Original Claims rely exclusively upon the Fillmore Guaranty documents. They claim that because none of the Original Claims assert claims against Integrated based on fraud and because such claims allege no wrongdoing on the part of Integrated, the amendment does not relate back to the Original Claims and should be dismissed. (Appellants Br.Supp. at 13.)

The Bankruptcy Court held that the amended claim does not change any fact set forth in the Original Claim and concluded that it arises out of the identical set of facts as the Original Claim. As noted by the bankruptcy judge:

> defendant banks' amended Proofs of Claim neither 'Seek an increase in the amount or priority of the banks' original claims, nor do they concern matters outside the scope of the transaction forming the basis of the original claims.' Rather, the amendment simply raises an alternative legal theory which Defendant banks hoped would entitle them to a pro rata share in the bankruptcy estate, even in the event that Integrated prevails in its adversary action to avoid the alleged fraudulent transfers.

Tr. 13–14; citations omitted. The appellant's contention that the amendment is permissible only if the "underlying causes of action were asserted" in the original proof of claim is contrary to prevailing legal theory. *See, e.g.,* 3 Moore, *Moore's Federal Practice* ¶ 15.15[3] at 15–148 (1992) (an amendment that changes only the legal theory of the action or adds another claim arising out of the same transaction or occurrence will relate back); *In re Miss Glamour Coat Co.,* 80–2 U.S.Tax Cas. p 9737, 1980 WL 1668 (S.D.N.Y.1980) (concluding that courts have moved away from the cause-of-action test in allowing an amendment under Fed.R.Civ.P. 15; amendments are now permitted if they arise out of the same transaction or occurrence as the first claim).

The appellant contends that the Amended Claims for fraudulent inducement require extensive additional evidence whereas the facts needed to prove appellees' Original Claims merely require entry of the guaranties into evidence and proof that the primary obligations remain unpaid. (Appellants Br.Supp. at 19.) The appellant thus claims that Integrated received no "reasonable notice" of the nature, facts and extent of appellees' late filed tort claims and, therefore, such claims are time-barred." *Id.* at 20. This same argument was rejected in *Matter of Commonwealth Corp., supra.* In that case, the Fifth Circuit reversed a Court's denial of a motion to amend a claim, thereby permitting amendment despite the fact that the original claim was limited to recovery on a check and irrespective of the fact that it was filed approximately three years and four months after the bar date fixed by the district court. The Court stated:

> [W]hether the original claim was in fact only a claim on the dishonored instrument or was instead a claim on the underlying obligation, the battle lines were certain to be drawn, and were in fact drawn by the Trustee, on the existence and validity of the underlying obligation. The proposed amendment, which states with greater particularity the circumstances under which that obligation allegedly arose, falls clearly within the class of amendments to proofs of claim most commonly allowed to be filed.

617 F.2d at 422. It is clear that the "conduct, transaction or occurrence" at issue is Integrated's alleged inducement of the banks to extend loans based upon its guaranties of repayment. (Appellees Br. at 26.) I agree with the bankruptcy judge's determination that "[Appellee] banks' counterclaims arise out of the very transaction which Integrated is attempting to avoid." Blackshear Tr., p. 10 line 25, p. 11 line 2. Therefore, similar to *Commonwealth,* this proposéd amendment simply states with greater particularity the circumstances under which Integrated's obligation to appellee banks arose and thus, "falls clearly within the class of amendments to proofs of claim most commonly allowed to be filed." *Id.*

 While the decision below does not contain a detailed two-pronged analysis, that is not necessary to affirmance. *See Black & Geddes, supra,* at 553 (district court affirmed bankruptcy judge's decision to deny a motion to amend a proof of claim despite the fact that the bankruptcy judge did not discuss the two-pronged analysis and specifically set forth the factors upon which the decision was made). Thus, the bankruptcy court's failure to discuss such issues does not mandate a reversal of the judge's decision. Matters concerning decisions within the discretion of bankruptcy judges will not be disturbed by the district court unless the district court finds that no reasonable man could agree with the bankruptcy judge's decision. *See, e.g., Am Intern, supra,* at 81. Therefore, "on appeal, an abuse of this discretion will only be found where (1) the decision was based on an erroneous conclusion of law; (2) where the record contains no evidence on which the judge could have based his decision; or (3) where the supposed facts found are clearly erroneous as found." *Id. quoting Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 563 (7th Cir.1984).

Judge Blackshear's decision was not based upon an erroneous conclusion of law. The record contains evidence that the appellee banks' amended proofs of claim seek no increase in the amount or priority of the bank's original claims. (Appellees Br. at

13.) This factor alone goes to support three of the five factors that need to be considered when balancing the equities. *See, e.g., McLean Industries, supra,* at 708 (i.e., undue prejudice to opposing party; whether other creditors would receive a windfall were the amendment not allowed; whether other claimants might be harmed or prejudiced). In fact, it has been noted that the "crucial inquiry is whether the opposing party would be unduly prejudiced by the amendment." *See, e.g., In re Futuronics Corp.,* 23 B.R. 281, 283 (Bankr. S.D.N.Y.1982). The appellants contend that "allowing appellees' amendments would severely prejudice the senior creditors of Integrated." (Appellants Br.Supp. at 24.) They also indicate that defending appellees' fraud claim would "require substantial additional legal expense and delay," and contend that confirming a plan of reorganization would be difficult if other Integrated creditors "latch onto appellees' theory of submitting similar late claims." *Id.* at 25. However, I find there to be no undue prejudice imposed upon the appellant by allowing the amended proofs of claim. First, there has been no addition of new creditors or transactions, *See, e.g., In re Computer Devices,* 51 B.R. 471, 477 (Bankr.D.Mass.1985) no increase in claim amount, *see, e.g., Am Intern, supra,* at 82 ("Ordinarily, to be within the scope of a permissible amendment, the second claim should not only be of the same nature as the first *but also reasonably within the amount* to which the first claim provided notice."), and no increase in claim priority, *see, e.g., Black & Geddes, supra,* at 391 (amendment adding count seeking to impose constructive trust of funds in hands of debtor denied where original claim was unsecured).

 While the prejudice to the appellant would be minimal upon allowing the amendment, the prejudice to the appellee in denying the amendment would be severe. The Bankruptcy Court acknowledged that appellees' claims constitute compulsory counterclaims that must be interposed in the adversary proceeding or waived. Fed. R.Civ.P. 13(a). Judge Blackshear correctly stated, "[w]ere this Court to grant Inte-

grated's motion to dismiss, it would in essence, effectively foreclose defendant[ ] banks' ability to raise these counterclaims." Tr. 11. As for the appellant's argument regarding added expense, increased administration and litigation costs are not alone sufficient to overcome the policy favoring liberal amendments of proofs of claim. *See, e.g., McLean Industries, supra,* at 710.

The factors that remain to be balanced include bad faith or dilatory behavior on part of the claimant, and the justification for the inability to file the amended claim at the time the original claim was filed. The appellees contend that Integrated commenced the Adversary Proceeding seeking a declaratory judgment after the claims deadline established by the Court. They then contend that following the receipt of the Complaint, they "promptly filed" Amended Proofs of Claim that were "tailored to meet the contingency that Integrated will succeed in proving its own view of [the] transactions as alleged in the Complaint." (Appellees Br. at 13–14.) The appellants contend that "the appellees and their counsel were [first] advised of Integrated's fraudulent transfer claims during the Summer and Fall of 1989, when appellees negotiated a debt restructuring of their direct claims against FCA concerning the Fillmore Guaranties." (Appellants Br. Supp. at 25.) The Bankruptcy Court by Order dated June 22, 1990 fixed September 12, 1990, as the Bar Date by which all persons and entities wishing to assert claims against Integrated must file proofs of claim. (Appellants Br.Supp. at 9.) On August 21, 1991, Integrated commenced an adversary proceeding seeking a declaratory judgment that the Fillmore Guaranties were fraudulent transfers. (Appellants Br. Supp. at 6.) These facts are not "clearly erroneous as found." *See, e.g., Am Intern, supra,* at 81. The parties seem to be in dispute as to when the appellees were first aware of the appellant's intention to commence a fraudulent transfer action. The dispute is not material to a decision of whether, in the totality of circumstances, the bankruptcy judge abused his discretion in allowing the amendment.

*Counterclaims as set-offs against fraudulent transfer claim*

▇▇ Integrated alleges that appellee banks' counterclaims are attempts at set-off against its fraudulent transfer claims, which, if allowed, will eviscerate the Trustee's or Debtor in Possession's avoidance power under the statute. The bankruptcy judge held that such claims would qualify under 11 U.S.C. § 553 as a "recoupment" and not as a "set-off." The Court distinguished the right of set-off from the principle of recoupment, concluding that the principle of recoupment typically involves a counterclaim that arises out of the same transaction as the plaintiff's claim or cause of action, whereas the principle of set-off applies only where the mutual debt and claim contemplated arise from different transactions. Tr. 16–17. *See also* 4 Collier on Bankruptcy, ¶ 553.03 at 553–14 (1991); *In re Yonkers Hamilton Sanitarium, Inc.,* 34 B.R. 385, 386 (Bankr.S.D.N.Y. 1983). Recoupment is permitted based on fraud in the inducement of the very transaction out of which a claimed fraudulent transfer arose. *See, e.g., Matter of Curtina Intern., Inc.,* 23 B.R. 969, 980 (Bankr. S.D.N.Y.1982) ("Since both claims arise from the same transaction, there is conceptually no set off."); *Matter of Holford,* 896 F.2d 176, 178–79 (5th Cir.1990) ("Recoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on plaintiff's claim."). Thus, the Bankruptcy Court did not come to an erroneous legal conclusion when it stated that "the principle of recoupment applies even in fraudulent transfer actions."

### CONCLUSION

"This Court is acutely sensitive to enforcing claims bar dates and effecting case finality. It is apparent from the very nature of the within claim, however," *White Motor Corp., supra,* at 289, that the amendment to the proof of claim does not seek recovery on new or different facts. I conclude therefore, that the Bankruptcy

**74**

Court's decision to allow the amended proof of claim displayed no abuse of discretion. The aforementioned equitable concerns do not override this conclusion. *See, e.g., McLean Industries, supra,* at 708 ("[I]f an amendment does not seek recovery on any new or different claim, amendment should be liberally granted absent overriding equitable concerns.").

For the reasons discussed above, the July 30, 1992 decision of Judge Blackshear is affirmed.

Karen E. Wagner, Davis Polk & Wardwell, Michael J. Crames, Kaye Scholer Fierman Hayes & Handler, New York City, Frank Cummings, Leboeuf Lamb Lieby & MaCrae, Washington, DC, for plaintiffs.

Mark A. Speiser, Stroock & Stroock & Lavan, New York City, for intervenor the Official Committee of Unsecured Creditors of LTV Steel Co., Inc. and Certain Affiliates.

Thomas E. Biron, Blank Rome Comiskey & McCauley, Philadelphia, PA, for intervenor the Official Committee of Unsecured Creditors of the LTV Corp.

Edgar H. Booth, Warshaw Burstein Cohen Schlesinger & Kuh, New York City, for intervenor Committee of Equity Sec. Holders of The LTV Corp., et al.

Richard W. Mark, Asst. U.S. Atty., New York City, for defendant.