**In re ASIA GLOBAL CROSSING, LTD., et al., Debtors.**

**No. 02 B 15749(SMB).**

United States Bankruptcy Court, S.D. New York.

May 25, 2005.

Golenbock, Eiseman, Assor, Bell & Peskoe LLP, New York, NY (Jonathan L. Flaxer, David J. Eiseman, Adam C. Silverstein, Rebecca S. Natow, of Counsel), for Trustee.

Kronish, Lieb, Weiner & Hellman LLP, New York, NY (Lawrence C. Gottlieb, John A. Morris, Jeffrey L. Cohen, of Counsel) for Pacific Crossing, Ltd., et al.

## OPINION EXPUNGING AVOIDANCE CLAIMS CONTAINED IN POST–BAR DATE AMENDED PROOF OF CLAIM

STUART M. BERNSTEIN, Chief Bankruptcy Judge.

After the bar date in this case expired, Pacific Crossing, Ltd. and several affiliated entities (collectively "PCL") filed an amended proof of claim. The latter identified several fraudulent transfer and preference claims arising under chapter 5 of the Bankruptcy Code. The trustee has

moved to expunge these claims as time-barred. The motion is granted for the reasons explained below.

## BACKGROUND

### A. The Timely Proof of Claim

This dispute concerns three affiliated, bankrupt telecommunications companies, Global Crossing, Ltd. ("Global Crossing"), PCL and Asia Global Crossing, Ltd. ("Asia Global").[1] The facts, which are not in material dispute, come from the last claim filed by PCL before the bar date (the "Claim").[2]

PCL was formed in 1998 to finance, construct and operate a submarine fiber optic cable, known as "PC–1," running between the west coast of the United States and Japan. (Claim, at ¶ 4.) The PCL network was to be part of a larger network connected with other Global Crossing networks around the world. (*Id.*)

PCL did not have any full time employees. It was entirely dependent on Asia Global and Global Crossing for its operations, sales, administration and management. (*Id.*, at ¶ 6.) PCL's officers and directors were also employees, officers and directors of Asia Global, Global Crossing or other Global Crossing affiliates. (*Id.*, at ¶ 7.) As a result, every aspect of PCL's business was controlled by individuals who owed their primary allegiance to Asia Global, Global Crossing or other Global Crossing affiliates. (*Id.*, at ¶ 8.)

PCL contends that Asia Global or Global Crossing, or both, either misallocated the revenue or retained payments belonging to PCL in connection with the sale of "capacity" on PC–1, (*id.*, at ¶¶ 9–14), the operation, administration and maintenance of the cable network, (*id.*, at ¶¶ 15–16), and Asia Network Offer contracts. (*Id.*, at ¶¶ 17–18.) They also forced PCL to bear unjustifiable expenses. According to PCL, it was charged a 5% "buy-sell" fee on certain agreements involving the use of PC–1, and was also charged a management fee despite an agreement that no management fee would be charged. (*Id.*, at ¶ 20.) In addition, Asia Global or Global Crossing, or both, arranged to have PCL pay an exorbitant fee of $42.5 million per year to a Global Crossing affiliate for the actual operation and maintenance of the PC–1 cable. (*Id.*, at ¶¶ 21.) It is likely that they also misallocated general administration and overhead expenses to PCL, (*id.*, at ¶ 22), and diverted PCL's customers, (*id.*, at ¶ 23), and Asia Global failed to pay for the use of the PCL circuits that it provisioned. (*Id.*, at ¶¶ 24–26.)

A portion of the Claim concerns PCL's cable landing station located in Shima, Japan and owned by PCL. (*See id.*, at ¶ 27.) On or about May 2, 2002, Asia Global, acting with its affiliates, officers, directors and employees, "purportedly transferred a 54% interest" to EAC Japan, Ltd., a 100% subsidiary of Asia Global, (*id.*, at ¶ 28), without the authority or consent of PCL. (*Id.*, at ¶ 30.) Asia Global and EAC subsequently encumbered the Shima station with two mortgages, again without the knowledge or consent of PCL. (*Id.*, at ¶¶ 31–34.) Finally, Asia Global failed to

---

1. Global Crossing and fifty-four of its subsidiaries filed chapter 11 petitions in this Court on January 28, 2002. PCL, an indirect, majority-owned subsidiary of Asia Global, together with four related entities, filed chapter 11 petitions in the Delaware bankruptcy court on July 19, 2002. Asia Global, an indirect subsidiary of Global Crossing, filed its chapter 11 petition in this Court on November 17, 2002.

On June 10, 2003, the Asia Global chapter 11 case was converted to a chapter 7 proceeding, and Robert L. Geltzer is the chapter 7 trustee.

2. A copy of the Claim is attached as Exhibit A to the *Trustee's Motion to Expunge Pacific Crossing Ltd.'s Amended Proof of Claim,* dated Feb. 18, 2005 (*"Claim Objection"*) (ECF Doc. # 568.).

pay for the use of the Shima station. (*Id.*, at ¶ 35.)

According to PCL, paragraph 36 of the Claim alluded to certain transfers of PCL's property. It stated:

> Between July 19, 2001 through July 19, 2002 (when the Claimants filed their chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware), the Debtor diverted revenues and monies due to [PCL]. Such revenue diversion, included, among other things, the diversion of [PCL's] revenues for the ostensible purpose of repaying 'loans' allegedly extended by Debtor and the Debtor's affiliates to [PCL], and retention of [PCL's] revenues as 'offsets' to alleged amounts due as management fees for management services allegedly provided by the Debtor.

The Claim sought $677,000,000.00. It did not ascribe a value to any of the claims or categories of claims that it set forth.

## B. Subsequent Proceedings

After the bar date in Asia Global's chapter 7 case had expired, PCL moved to clarify or extend the time to amend the Claim. (*See Motion of Pacific Crossing Ltd. and Affiliated Entities for an Order (I) Clarifying Effect of Their Proof of Claim or, in the Alternative, (II) Extending the Time to Amend Their Proof of Claim and/or (III) Granting Relief from the Automatic Stay,* dated July 2, 2004 (ECF Doc. # 409).)[3] PCL sought the opportunity to detail certain preference and fraudulent transfer claims (the "Avoidance Claims"). Because PCL was itself a debtor, the Avoidance Claims needed to satisfy

two separate statutes or periods of limitation. First, they had to be asserted in the Asia Global case prior to the chapter 7 bar date. Second, they had to be asserted in the PCL bankruptcy within two years of the filing date of that case. *See* 11 U.S.C. § 546(a).[4]

By early July 2004, the Asia Global bar date had already run, and the two year statute of limitations in the PCL case was about to expire. PCL's motion sought, in the alternative, (1) a "clarification" that the Claim met the requirement for commencing an avoidance action, (2) to amend the Claim to detail the voidable transfers or (3) relief from the stay to allow PCL to commence an adversary proceeding in its own case to recover voidable transfers from Asia Global.

The principal question raised by PCL's motion was whether the Avoidance Claims were encompassed within the timely Claim such that a post-bar date amendment that provided more detail would relate back and be timely. If PCL had missed the bar date in the Asia Global case, it did not matter that it could still file a timely adversary proceeding in its own case. PCL's motion did not, however, identify the Avoidance Claims, and it was impossible to decide the "relation back" question on the state of the record. Accordingly, the Court authorized PCL to file the adversary proceeding in its own case and particularize the Avoidance Claims, and amend the Claim in this case to set forth the same detail. The foregoing was without prejudice to the trustee's position that the Avoidance Claims did not relate back for bar date purposes.

---

**3.** A copy of the motion is attached to the *Claim Objection* as Ex. C.

**4.** Section 546(a) states, in relevant part:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
> (1) the later of—
> (A) 2 years after the entry of the order for relief . . . .

## C. The Complaint and the Amended Proof of Claim

PCL subsequently filed an adversary complaint, (the "Complaint") (*Claim Objection,* Ex. F), and an amended proof of claim, dated July 30, 2004 (the "Amended Claim"). (*Id.,* Ex. G.) According to the Amended Claim, PCL made the following six transfers in the aggregate sum of $17,195,499.11 to Asia Global within the year preceding the PCL bankruptcy:

| Nature of Payment | Date | Amount |
| --- | --- | --- |
| Reimbursement of Expenses | 07/31/2001 | 114.00 |
| Management Services and Expenses | 07/31/2001 | 4,821,958.73 |
| Loan Repayment | 08/29/2001 | 10,575,109.22 |
| Management Services and Expenses | 05/31/2002 | 1,458,333.00 |
| Management Services and Expenses | 06/28/2002 | 297,667.00 |
| Expenses | 07/12/2002 | 42,317.16 |
| | | 17,195,499.11 |

(Amended Claim, Ex. A.)

The Amended Claim prompted the pending motion. In substance, the trustee contends that the Avoidance Claims are time-barred because they are new allegations, and do not relate back to the timely Claim. They should, therefore, be expunged. In response, PCL argues that the allegations, which the trustee calls new, simply add detail to the allegations in the Claim, (*Objection of [PCL] to Motion of Chapter 7 Trustee to Expunge Amended Claim,* dated Mar. 10, 2005 ("*PCL's Response*"), at ¶¶ 16–18, 24)(ECF Doc. # 577), and the amendment will not cause prejudice to the trustee. (*Id.,* at ¶¶ 31–35.)

## DISCUSSION

The decision to allow the amendment of a claim is committed to the discretion of the bankruptcy judge. *Associated Container Transp. (Australia) Ltd. v. Black & Geddes, Inc. (In re Black & Geddes, Inc.),* 58 B.R. 547, 553 (S.D.N.Y.1983); *In re Enron Corp.,* 298 B.R. 513, 520 (Bankr.S.D.N.Y.2003). The claimant may amend a timely claim after the bar date to correct defects of form, provide more detailed allegations of fact relating to the timely claim, or plead a new theory of recovery under the facts set forth in the timely claim. *Integrated Resources, Inc. v. Ameritrust Co. N.A. (In re Integrated Resources, Inc.),* 157 B.R. 66, 70 (S.D.N.Y. 1993); *Enron Corp.,* 298 B.R. at 520; *In re McLean Indus., Inc.,* 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990); *In re W.T. Grant Co.,* 53 B.R. 417, 420 (Bankr.S.D.N.Y. 1985); *see In re G.L. Miller & Co.,* 45 F.2d 115, 116 (2d Cir.1930). The claimant may not, however, through the guise of an amendment, circumvent the bar date by asserting a new claim. *Enron Corp.,* 298 B.R. at 520; *In re Drexel Burnham Lambert Group, Inc.,* 151 B.R. 684, 694 (Bankr. S.D.N.Y.1993); *see G.L. Miller & Co.,* 45 F.2d at 116. Accordingly, the bankruptcy court must examine the proposed post-bar date amendment closely to ensure that it amends a timely claim and does not assert a new claim. *Integrated Resources, Inc.,* 157 B.R. at 70; *Enron Corp.,* 298 B.R. at 520; *Maxwell Macmillan Realization Liquidating Trust & MCC GAO, Inc. v. Aboff (In re MacMillan),* 186 B.R. 35, 49 (Bankr.S.D.N.Y.1995); *W.T. Grant Co.,* 53 B.R. at 422.

Courts have generally applied a two part test in making this determination. The bankruptcy court should "look first to whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *Black & Geddes, Inc.,* 58 B.R. at 553; *accord Integrated Resources, Inc.,* 157 B.R. at 70; *Enron Corp.,* 298 B.R. at 520. If the claimant prevails on the first prong, the bankruptcy court must also determine whether it would be equitable to allow the amendment. *Id.* at 521; *see Black & Geddes, Inc.,* 58 B.R. at 553. The equitable considerations include "(1) undue prejudice to the opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would re-

ceive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; (5) the justification for the inability to file the amended claim at the time the original claim was filed." *McLean Indus., Inc.,* 121 B.R. at 708 (citations omitted); *accord Integrated Resources,* 157 B.R. at 70; *Enron Corp.,* 298 B.R. at 521.

▪ The first prong of the test permitting an amendment of a claim is basically the same as the test under Fed. R.Civ.P. 15(c) regarding the "relation back" of a later pleading to an earlier one.[5] *E.g., Integrated Resources, Inc.,* 157 B.R. at 70; *McLean Indus., Inc.,* 121 B.R. at 710; *Enron Corp.,* 298 B.R. at 521. The court must decide whether there is a sufficient commonality of facts between the allegations relating to the two causes of action to preclude the claim of unfair surprise. *Benfield v. Mocatta Metals Corp.,* 26 F.3d 19, 23 (2d Cir.1994). The court should also consider whether the defendant had notice of the claim now being asserted, and whether the plaintiff will rely on the same type of evidence to prove both claims. *See id.; see generally* 3 James Wm. Moore, Moore's Federal Practice § 15.19[2], at 15–83 to 15–84 (3d ed.2004).

▪ Here, the Avoidance Claims do not relate back to the Claim. They arose out of a different set of facts, and the Claim did not provide notice that they would be asserted. The Claim identified numerous instances in which Asia Global or Global Crossing, or both, prevented PCL from *receiving* what it was entitled to get. Except for the transfer of the Shima landing station, the gravamen of the Claim was that the officers and directors of Asia Global (and Global Crossing) used their positions as officers and directors of PCL to divert revenues, misallocate expenses, and withhold payments.

The Claim did not allege or imply that any of the revenues or expenses were diverted from funds in the possession of PCL. Furthermore, the Claim did not allege the type of facts, such as the financial condition of PCL at the time of transfers, that are key to an avoidance claim. Lastly, the Claim included a general damage claim of $677 million, but did not itemize the damages or attribute a specified amount of damages to a particular allegation of wrongdoing.

In contrast, the Avoidance Claims focus on six clearly identified instances in which PCL transferred property from its bank accounts to Asia Global. While a preference or fraudulent transfer may be a type of diversion, the Avoidance Claims refer to the diversion of money in PCL's possession while the Claim referred to a diversion of money that prevented PCL from ever gaining possession. Furthermore, the Avoidance Claims attribute a specific amount of damages to each transfer. Although these damages are less than the $677 million sought in both the Claim and the Amended Claim, it does not follow, as PCL seems to imply, that the Avoidance Claim damages were a part of the general and much larger damage claim. (*See PCL's Response,* at ¶ 24.)

Perhaps for this reason, PCL steers the discussion to ¶ 36, arguing that it referred to transfers of PCL's property within one year of PCL's bankruptcy. The text of

---

**5.** Rule 15(c) states in pertinent part as follows:

An amendment of a pleading relates back to the date of the original pleading when
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

¶ 36, however, did not even refer to "transfers." Instead, it alleged that Asia Global diverted revenues and monies for, among other things, the repayment of loans, and retained revenues as offsets for amounts allegedly due on account of management fees and expenses.[6] The clear import of ¶ 36, like the rest of the Claim, was that Asia Global prevented PCL from *receiving* monies to which it was entitled.

In fact, the only reference to "transfers" appeared in the caption or title above ¶ 36.[7] The caption states:

> The Debtor Transferred Property of Claimants Within One Year of the Filing of the Claimants' Bankruptcy Petition.

It is not surprising, therefore, but nonetheless curious, that PCL points primarily to the caption rather than the text of ¶ 36 in support of the argument that the Claim provided notice of avoidance claims. (*PCL's Response*, at ¶ 18)(comparing the language in the caption preceding ¶ 36 to the language in 11 U.S.C. § 547(b)(4).) But even the relatively obscure caption refers only to transfers of the PCL's property made by Asia Global, not transfers made by PCL to Asia Global.

Two other factors support the conclusion that the amendment would unfairly surprise Asia Global. First, the trustee filed an objection to the Claim on or about December 22, 2003. (*See Claim Objection*, Ex. B.) The twenty-four page objection contested the allegations of misallocation and diversion but showed no awareness that the Claim included preference or fraudulent transfer claims. Furthermore, the extent of the trustee's comments to ¶ 36 were limited to the following:

> 86. The PC Companies assert that AGC diverted revenues due to the PC Companies within one year of the PC Companies Petition Date by repaying loans that AGC and its affiliates extended to the PC Companies and by retaining revenues as 'offsets' to amounts due as management fees.
>
> 87 The PC Companies allege no facts in support of these assertions, and the Trustee is not aware of any such diversion of revenues through the repayment of loans, or the retention of revenues as an offset to amounts due to AGC as management fees.

These comments indicate that the trustee interpreted ¶ 36 literally, as an allegation that Asia Global repaid loans and management fees that PCL allegedly owed by retaining monies that it should have paid PCL, and not by causing PCL to transfer monies in PCL's possession. The trustee's interpretation was reasonable, given the substance of the allegations in the Claim and the failure to aver the facts required to prove a preference or fraudulent transfer claim.

Second, PCL must necessarily rely on different evidence to prove its breach of fiduciary duty claims and the Avoidance Claims. As noted, the former refer to transactions in which Asia Global prevented PCL from collecting money to which PCL was entitled. The latter concern transfers made by PCL from money in its possession. Beyond that, the preference claims require proof that the transfers were made on account of antecedent debts, not bogus debts, *see* 11 U.S.C. § 547(b)(1), that PCL was insolvent at the time of the transfer, 11 U.S.C. §§ 547(b)(3), and that

---

6. The Amended Claim does not allege that the offsets are avoidable under 11 U.S.C. § 553.

7. The Claim also referred to "transfers" of PCL's property, without elaboration, in its recitation of the wrongs in ¶ 3. PCL's submissions do not attribute any significance to this reference.

the transfers enabled Asia Global to receive more than it would receive if the transfers were never made, and instead, Asia Global received a distribution on its claim in a PCL chapter 7 bankruptcy. 11 U.S.C. § 547(b)(5). The constructive fraudulent transfer claims require proof that PCL did not receive reasonably equivalent value, and that at the time of the transfers, PCL was insolvent, left with unreasonably small capital or could not pay its debts as they matured. *See* 11 U.S.C. § 548(a).[8]

In conclusion, the Avoidance Claims are new and arise out of different transactions. The Claim did not provide notice of the Avoidance Claims, and the Avoidance Claims would require different proof from the common law breaches of fiduciary duty relating to the diversion and withholding of revenues and payments and the misallocation of expenses. Finally, the amendment would subject Asia Global to unfair surprise. The Avoidance Claims do not relate back to the filing of the Claim, and accordingly, I need not reach the equitable considerations under the second part of the test discussed earlier.

Settle order on notice.

---

**8.** The Complaint also alleges claims under Delaware's fraudulent transfer law. Delaware has adopted the Uniform Fraudulent Transfer Act, which is based on the fraudulent transfer provisions of the Bankruptcy Code. Hence, the requirements are essentially the same.