**In re ENRON CORP., et al., Debtors.**

**No. 01–16034 (AJG).**

United States Bankruptcy Court,
S.D. New York.

Sept. 17, 2003.

Winston & Strawn, David Neier, New York City, Terry John Malik, Chicago, IL, for Midland Cogeneration Venture Limited Partnership.

Weil, Gotshal & Manges LLP, Martin J. Bienenstock, Brian S. Rosen, New York City, Melanie Gray, Houston, TX, Martin A. Sosland, Dallas, TX, for Debtors.

Squire, Sanders & Dempsey L.L.P., Stephen D. Lerner, Jeffrey A. Marks, Kim D. Seaton, Cincinnati, OH, Co–Counsel for Official Committee of Unsecured Creditors.

## MEMORANDUM DECISION AND ORDER DENYING MIDLAND COGENERATION LIMITED PARTNERSHIP'S MOTION TO AMEND A PROOF OF CLAIM OR TO PERMIT A LATE–FILED PROOF OF CLAIM BASED ON EXCUSABLE NEGLECT

ARTHUR J. GONZALEZ, Bankruptcy Judge.

The issues before the Court are (1) whether Midland Cogeneration Venture Limited Partnership ("Midland") may amend a timely-filed proof of claim, which concerns a natural gas purchase agreement, that it filed against Enron North American Corp. ("ENA") (a) to include an additional claim for a guaranty that Enron Corp. ("Enron") executed regarding the purchase agreement and (b) to add Enron as an additional debtor to the original proof of claim or, in the alternative, (2) whether Midland may file a late proof of claim against Enron for the guaranty claim due to Midland's failure to timely file a claim based on alleged "excusable neglect." Upon consideration of the pleadings and arguments of the parties, the Court finds Midland may not amend its original proof of claim or, in the alternative, have its late-filed proof of claim against Enron deemed timely.

### I. Jurisdiction

The Court has subject matter jurisdiction over this matter under sections 1334(b) and 157(a) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding within the meaning of section 157(b)(2)(A), (B) and (O) of title 28 of the United States Code.

### II. Background

#### A. *General Procedural History*

Commencing on December 2, 2001 (the "Petition Date"), Enron, ENA and certain of Enron's direct and indirect subsidiaries (collectively, the "Debtors" or "Debtor," referencing a single entity) each filed voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been proce-

durally consolidated for administrative purposes. Since the Petition Date, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

By order dated August 1, 2002 (the "Bar Date Order"), this Court set October 15, 2002 as the bar date (the "Bar Date") by which proof of claims must be filed against certain Debtors. On August 10, 2002, the Debtors mailed, *inter alia*, the notice of the Bar Date ("Bar Date Notice") to potential creditors of the Debtors, including Midland.

### B. *Midland's Proof Of Claim*

On May 26, 1993, Midland entered into a certain natural gas purchase agreement (the "Purchase Agreement") with Union Pacific Fuels, Inc. ("Union Pacific"), whereby Union Pacific committed to supply natural gas to Midland from October 1, 1993 through September 30, 2006.

On May 7, 1996, Union Pacific and ENA (formerly known as Enron Capital & Trade Resources Corp.) executed a certain assignment and assumption agreement (the "Assignment and Assumption Agreement"), effective June 1, 1996, whereby ENA succeeded to all of Union Pacific's rights and liabilities under the Purchase Agreement. Midland also executed the Assignment and Assumption Agreement consenting to the assignment and transfer by Union Pacific and the acceptance and assumption by ENA of the agreement.

In consideration of, and as an inducement for Midland consenting to the Assignment and Assumption Agreement where ENA assumed the Purchase Agreement, Enron, in its capacity as parent of ENA, executed and delivered to Midland a certain guaranty (the "Guaranty") dated as May 7, 1996, whereby Enron absolutely and unconditionally guaranteed the obli-

gations of ENA under the agreement. The Guaranty provides for the recovery of fees and expenses incurred by Midland for ENA's breach and rejection of the Purchase Agreement. Schedule F of Enron's statement of financial affairs ("Statement of Financial Affairs"), entitled "Creditors Holding Unsecured Nonpriority Claims" and filed on June 17, 2002, listed the Guaranty as contingent and unliquidated.

Midland alleges that it engaged in postpetition discussions and negotiations with ENA on ENA continuing the supply of natural gas and regarding the possibility of ENA rejecting the Purchase Agreement and efforts to mitigate damages. Midland further alleges that during discussions of the Purchase Agreement, Midland and ENA also discussed a second natural gas purchase agreement, dated as of September 1, 1990, between ENA, as successor by sale and assignment to Ultramar Oil and Gas Limited, and Midland (the "Ultramar Agreement"). Midland asserts that it conducted extensive negotiations with ENA on quantifying pre-petition defaults, the terms of cure and other issues related to the proposed assumption and assignment of the Ultramar Agreement. By order dated May 17, 2002, the Court authorized ENA to assume the Ultramar Agreement and assign it to El Paso Merchant Energy, L.P.

On March 22, 2002, ENA sent a letter to Midland indicating its intent to not deliver any natural gas to Midland under the Purchase Agreement during April 2002 and, indeed, ENA failed to make deliveries in April 2002. Pursuant to an amended April 11, 2002 order of the Court establishing procedures for rejecting executory contracts, ENA sent notice to Midland on April 19, 2002 rejecting the Purchase Agreement.

On October 10, 2002, Midland filed a proof of claim against ENA (the "Proof of Claim") in the amount of $12,567,557 based, in part, on ENA's failure to deliver natural gas to Midland from April 1 to April 19, 2002 prior to rejection of the Purchase Agreement, and, in further part, pursuant to section 365(g) of the Bankruptcy Code, out of damages from ENA's rejection of the Purchase Agreement. On an exhibit to the Proof of Claim, Midland stated it reserved the right to amend, supplement or otherwise modify the claim at any time. Midland, however, failed to include the Guaranty claim and Enron as a debtor on the Proof of Claim.

Accordingly, on April 24, 2003, Midland filed a motion (the "Motion"), requesting for an order to allow it to amend the Proof of Claim to include a claim for the Guaranty against Enron or, in the alternative, to allow it to file a late proof of claim against Enron for the Guaranty pursuant to Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule") based on excusable neglect. In response, Enron and ENA filed an objection to the Motion on May 20, 2003, which was joined on May 21, 2003 by the Official Committee of Unsecured Creditors appointed to serve in the Debtors' bankruptcy proceedings. A hearing was held on May 22, 2003.

### III. Discussion

#### A. *Parties' Contentions*

##### 1. *Midland's Contentions*

Midland maintains that the omission of the Guaranty claim against Enron from the Proof of Claim did not result from any bad faith or dilatory behavior. Rather, Midland alleges that "neglecting to file a claim against Enron ... under the ... Guaranty resulted solely from inadvertence." In particular, Midland explains

that since it was so heavily focused upon, and involved in, negotiations with ENA regarding the rejection of the Purchase Agreement and the assignment and assumption of Ultramar Agreement, it neglected to include the Guaranty claim with the original Proof of Claim.

Although the Motion was filed approximately six months after the Bar Date, Midland contends that the Debtors will not be prejudiced with amending the Proof of Claim against ENA or a filing of late proof of claim against Enron because the Debtors neither have filed a plan of reorganization nor a disclosure statement as of the Motion date of April 24, 2003.[1] Additionally, Midland notes that since (1) the Proof of Claim was timely filed in ENA's bankruptcy proceeding, (2) the Guaranty was well known by business personnel and counsel for Enron and ENA, (3) extensive discussions and communications occurred among the parties regarding the Purchase Agreement and the Ultramar Agreement, and (4) the Guaranty was disclosed on Enron's Statement of Financial Affairs, the Debtors and their creditors have had full knowledge of the Guaranty liability.

Midland also argues that the Debtors' creditors will unlikely be prejudiced by allowing the Guaranty claim. Midland notes it is foreseeable that the Debtors will seek to substantively consolidate their chapter 11 estates as part of any plan of reorganization filed in their proceedings and, thus, Midland's claims will be treated as a single claim against a common fund. Midland thereby asserts that filing a claim directly against Enron under the Guaranty may be viewed as an action taken solely in an abundance of caution. Midland maintains that even if the Debtors' estates are not consolidated, Midland's rights under the Guaranty were preserved because Enron listed the Guaranty on its Statement of

---

**1.** The Debtors filed a plan of reorganization and a disclosure statement on July 11, 2003.

Financial Affairs. Midland claims that in this regard it seeks to liquidate a claim that until now Enron has treated as unliquidated and which the Court will ultimately have to estimate as part of the claim allowance process.

Moreover, Midland notes that it is not seeking to assert a claim entirely distinct from the original Proof of Claim it filed. Midland explains that as a practical matter, an absolute and unconditional guaranty, such as the Guaranty, is generally accepted to render the guarantor a co-obligor. Midland, therefore, argues that it merely seeks to supplement the Proof of Claim by expressly setting forth Enron's liability in its case as a co-obligor under the Purchase Agreement.

### 2. *Debtors' Contentions*

In their objection, the Debtors assert that Midland's proposed amendment fails to relate back to the Proof of Claim and is essentially an attempt to add an entirely new claim against another debtor, that is, against Enron, not ENA, for a completely separate, albeit related, contractual guaranty agreement. The Debtors maintain that such an amendment is not allowable and would be a back-route means to secure an extension of the Bar Date.

The Debtors further assert that Midland should not be allowed to file a late proof of claim for the Guaranty against Enron because, *inter alia*, (1) the Guaranty claim is being asserted over six months after the Bar Date, (2) the Debtors have been involved in the claims review and reconciliation process during this period, and (3) if creditors are permitted to file claims after the Bar Date, an inaccurate picture of the Debtors' liabilities will be created thereby impeding the proposal of a plan of reorganization or impacting other proceedings.

Furthermore, the Debtors note that although Enron and ENA are only two of approximately ninety Debtors, the Debtors' chapter 11 bankruptcy cases are complex and interconnected with the resolution of various claims or proceedings relating to other Debtors. The Debtors argue that since various Debtors are parties or guarantors to possibly thousands of agreements involving other Debtors, allowing an untimely filed proof of claim concerning a guaranty against one Debtor could affect the accuracy of other Debtors' liabilities.

In addition, the Debtors note that Midland's reason for the delay in filing a timely proof of claim against Enron on or before the Bar Date was due to oversight, that is, its inadvertence. The Debtors further note that Midland had unambiguous notice of the Bar Date and has not pointed to any contributing conduct on the part of the Debtors for the delay. Also, the Debtors argue that since the Guaranty claim was listed on its Statement of Financial Affairs as a contingent and unliquidated claim and Midland had notice thereof, Midland was required to file a proof of claim if it wanted its claim to be timely filed. The Debtors, therefore, argue that it was within Midland's reasonable control to timely file a proof of claim regarding the Guaranty claim against Enron.

### 3. *Committee's Contentions*

The Official Committee of Unsecured Creditors urges the Court to deny Midland's Motion, arguing that (1) Midland's proposed amendment does not relate back to its original Proof of Claim against ENA and is actually a new claim against a different debtor (that is, Enron) arising from a separate agreement, and (2) Midland failed to meet its burden of demonstrating that its failure to timely file the Proof of Claim was the result of excusable neglect.

### B. *Amendment of a Proof of Claim*

#### 1. *General Standards For Permitting A Post–Bar Date Amendment To A Timely–Filed Proof Of Claim*

Bankruptcy Rule 3003(c)(3) directs a bankruptcy court to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case. The bar date is critically important to the administration of a successful chapter 11 case for it intended "to be a mechanism providing the debtor and its creditors with finality." *In re Manville Forest Products Corp.*, 89 B.R. 358, 374 (Bankr.S.D.N.Y.1988). In particular, a " 'bar [date] order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization.' " *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr.S.D.N.Y. 1995) (quoting *First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir.1991)). Therefore, a bar date order "does not 'function merely as a procedural gauntlet,' ... but as an integral part of the reorganization process." *Id.* (quoting *First Fidelity*, 937 F.2d at 840 (quoting, in turn, *United States v. Kolstad (In re Kolstad)*, 928 F.2d 171, 173 (5th Cir.1991))). Accordingly, a bar date is likened to a statute of limitations which generally must be strictly observed. *Id.* (citing *Maxwell Macmillan Realization Liquidating Trust & MCC GAO, Inc. v. Aboff (In re Macmillan)*, 186 B.R. 35, 49 (Bankr.S.D.N.Y.1995)).

The decision to grant or deny an amendment to a timely-filed "proof of claim rests with the sound discretion of a bankruptcy judge." *In re McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y.1990). "Although amendments to proofs of claim should in the absence of contrary equitable considerations or prejudice to the opposing party be freely permitted, such amendments are not automatic...." *In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985). The amendments "are allowed, [however,] where the purpose is to cure a defect in the claim as originally filed, to describe the [original] claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *Id.; see In re G.L. Miller & Co.*, 45 F.2d 115, 116 (2d Cir.1930) (enumerating same three factors for amending claims). Nevertheless, an "amendment may not be used as a mechanism for circumventing the bar date." *In re Drexel Burnham Lambert Group Inc.*, 151 B.R. 684, 694 (Bankr. S.D.N.Y.1993). Therefore, a bankruptcy court must carefully scrutinize a post bar-date amendment "to ensure that the amendment is truly amending a timely-filed [proof of] claim and not asserting an entirely new claim." *In re Macmillan*, 186 B.R. at 49; *see In re Alexander's Inc.*, 176 B.R. 715, 723 (Bankr.S.D.N.Y.1995) (citing *In re W.T. Grant*, 53 B.R. at 422). An amendment will not be permitted when its purpose is to create an entirely new claim. *In re Andover Togs, Inc.*, 231 B.R. 521, 549 (Bankr.S.D.N.Y.1999).

When deciding whether to permit an amendment to a proof of claim, a bankruptcy court is guided by a two-prong test. *Integrated Resources, Inc. v. Ameritrust Co. N.A. (In re Integrated Resources, Inc.)*, 157 B.R. 66, 70 (S.D.N.Y.1993) (citing *In re Black & Geddes, Inc.*, 58 B.R. 547, 553 (S.D.N.Y.1983)). "A court must 'first look to whether there was timely assertion of a similar claim or demand evidencing an intention to hold the estate liable.' " *Id.* (quoting *Black & Geddes*, 58 B.R. at 553). If there were such a timely assertion, the court then examines each fact within the case and determines wheth-

er it would be equitable to allow the amendment. *Id.* In balancing the equities, the court considers the following equitable factors:

(1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*Integrated Resources,* 157 B.R. at 70 (quoting *McLean Industries,* 121 B.R. at 708); *see also In re Miss Glamour Coat Co., Inc.,* 1980 WL 1668, at *2, 1980 U.S. Dist. LEXIS 14545, at *12–13 (S.D.N.Y. 1980) (formulating similar equitable factors for considering in applying the two-prong test in permitting an amendment to a proof of claim). This second prong of the test is applied "only if the first prong is satisfied and the claim qualifies an amendment and not a new claim." *In re Sage–Dey, Inc.,* 170 B.R. 46, 49 (Bankr.N.D.N.Y. 1994). "If, however, a claim is 'new' and therefore fails to relate back [to the timely-filed original claim], all is not necessarily lost, however, because a late-filed claim may be permitted if the failure to file was the result of excusable neglect." *In re Macmillan,* 186 B.R. at 49.

2. *Application Of Rule 15(c) Of The Federal Rules Of Civil Procedure*

Neither the Bankruptcy Code nor Bankruptcy Rules directly address amendment of a proof of claim. Nevertheless, in determining whether to permit a post-bar date amendment to a timely-filed proof of claim under the first prong of the two-prong test, several courts have applied Rule 15(c) of the Federal Rules of Civil Procedure ("Rule") by analogy or explicitly, pursuant to Bankruptcy Rules 7015 and 9014(c), to analyze such an amendment.

*See Enjet, Inc. v. Maritime Challenge Corp. (In re Enjet, Inc.),* 220 B.R. 312, 315 (E.D.La.1998) (noting that "numerous courts have applied Rule 7015 and Rule 15(c) explicitly or by analogy in non-adversary [bankruptcy] proceedings"); *In re Brown,* 159 B.R. 710, 714 (Bankr.D.N.J. 1993) (noting that Rule 15's "standards for allowing amendments to pleadings in adversary proceedings ... also apply to amendments to a proof of claim"); *Liddle v. Drexel Burnham Lambert Group, Inc.,* 159 B.R. 420, 425 (S.D.N.Y.1993) ("[S]everal courts have held that the analysis for amendment of claims in bankruptcy is identical to the analysis required by Rule 15"); *McLean Industries,* 121 B.R. at 710 ("The test under Rule 15 is basically the same as that developed in the case law for amending claims in bankruptcy...."). 

■ Bankruptcy Rule 7015 provides that "Rule 15 ... applies in adversary proceedings." Although " 'the filing of an objection to a proof of claim is a contested matter,' [and] not an adversary proceeding[,] ... Bankruptcy Rule 9014 permits a [bankruptcy] court, at its discretion, to extend Rule 7015 to contested matters as well as adversary proceedings." *In re Stavriotis,* 977 F.2d 1202, 1204 (7th Cir. 1992) (citations omitted). In particular, Bankruptcy Rule 9014(c) states that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII [which includes Bankruptcy Rule 7015] shall apply" and, further, the Advisory Committee Note to the rule provides that "[w]hen the rules of Part VII are applicable to a contested matter, reference in the Part VII rules to adversary proceedings is to be read as a reference to a contested matter." "Part VII of the [B]ankruptcy [R]ules is 'based on the premise that to the extent possible practice before the bankruptcy courts and the district court[s] should be the same.' "

*Stavriotis,* 977 F.2d at 1204 (quoting Advisory Committee Note to Bankruptcy Rule 7001). Accordingly, the Court exercises its discretion under Bankruptcy Rule 9014(c) in applying by analogy the standards of subsections (c)(2) and (c)(3) of Rule 15 to determine whether Midland's Guaranty claim relates back to its original Proof of Claim against ENA and whether Midland can add Enron as a debtor to the Proof of Claim.

Rule 15(c) provides, in pertinent part, that

> [a]n amendment of a pleading relates back to the date of the original pleading when
>
> . . .
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the [120–day] period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(2)–(3) (2003). After the statute of limitations has run (here, the Bar Date), Rule 15(c)(2) is used for amending an original pleading (here, the original Proof of Claim) to add a claim or defense and, likewise, Rule 15(c)(3) applies for adding a new party (here, Enron). Although Rule 15(c)(3) refers to changing a party and does not explicitly state adding a par-

ty, courts have liberally construed the word "changes" (or "changing" under prior version of the rule) to include adding a new party. *See Shariff v. Coombe,* 2002 WL 1392164, at *4, 2002 U.S. Dist. LEXIS 11422, at *11 (S.D.N.Y. June 26, 2002) ("Rule 15(c) stands as a remedial device for adding or substituting a party. . . ."); *Bass v. World Wrestling Fed'n Entm't, Inc.,* 129 F.Supp.2d 491, 507 (E.D.N.Y. 2001) ("Although not explicitly stated in Rule 15(c)(3), courts have expanded its purview to cover adding, in addition to merely changing, defendants."); *Lundy v. Adamar of N.J., Inc.,* 34 F.3d 1173, 1192 (3d Cir.1994) ("Adding a party is essential no different from changing a party. . . . [T]his Circuit has interpreted Rule 15(c) to allow for the addition of a new party.").

■ Since Rule 15(c)(3) provides that the requirements of Rule 15(c)(2) must first be satisfied, the Court will examine whether Midland can add the Guaranty claim and Enron as a debtor to the Proof of Claim under the criteria of Rule 15(c)(3). However, the Court will not extend the analysis by analogy to Rule 15(c)(3)'s criteria that notice must be provided to the newly-named party within Rule 4(m)'s 120–day service period. The Court notes that "[t]he party asserting the relation back bears the burden of proof." *Randall's Island Family Golf Ctrs. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs.),* 2002 WL 31496229, at *2, 2002 Bankr.LEXIS 1247, at *6 (Bankr. S.D.N.Y. Nov. 8, 2002).

■ The Court first notes that the Assignment and Assumption Agreement executed by ENA and Union Pacific and consented to by Midland, specifically provides in paragraph 3 that the "Assignee [(that is, ENA)] . . . agrees, effective June 1, 1996, to enter into . . . a parental guaranty. . . ." Also, the Guaranty provides, in pertinent part, "[i]n consideration of, and as an in-

duce for [Midland] ... consenting to the assignment and assumption of that certain Natural Gas Purchase Agreement, ... [Enron] absolutely and unconditionally guarantees the prompt payment when due of all indebtedness and liabilities incurred by [ENA]...." Further, the Guaranty was entered into on the same date as the Assignment and Assumption, that is, May 7, 1996, and provides that it "shall expire concurrently with the termination of [Purchase Agreement] for any reason...." While the Guaranty claim is a different cause of action from the underlying Purchase Agreement, "[c]ourts, in general, have moved away from the 'cause of action' test in allowing an amendment under Rule 15 ..., and instead, on [sic] amendment has been allowed which adds another claim if it is 'arising out of the same transaction or occurrence.'" *Miss Glamour,* 1980 WL 1668, at *3, 1980 U.S. Dist. LEXIS 14545, at *9; *see In re Soly Srour,* 138 B.R. 413, 418 (Bankr.S.D.N.Y.1992) (holding same). Accordingly, the Court finds that the Guaranty claim does arise out of the same transaction or occurrence set forth in the original Proof of Claim, that is, the Guaranty claim is related to the Purchase Agreement.

The second factor of Rule 15(c)(3) requires that the party to be brought in by the amendment to have received adequate "notice" of the institution of the action so the party will not be prejudiced in maintaining a defense on the merits. Aside from actual notice under the rule, notice received by the original defendant may be imputed to the new defendant if there is an identity of interest between these two parties. Under the identity of interest exception, "the institution of an action against one party will constitute imputed notice to a party subsequently named by an amendment of the pleading when the parties are closely related in their business activities or linked in their corporate structure." *In re Allbrand Appliance & Television Co.,* 875 F.2d 1021, 1025 (2d Cir.1989). A "parent-subsidiary relationship standing alone is simply not enough ... to establish the identity of interest exception to the relation back rule." *Id.* Rather, courts applying this principle "have required substantial structural and cultural identity, such as shared organizers, officers, directors, and offices." *Id.; see Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 103 (1st Cir.1979) ("The identity of interest principle is often applied where the original and added parties are a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past and present forms of the same enterprise, or co-executors of an estate.").

Although the Guaranty claim was noted on Enron's Statement of Financial Affairs, such disclosure does not impute notice to Enron of the institution of the action, that is, Midland's filing of the Proof of Claim. Rather, because Enron shared officers with its subsidiary ENA and that the two entities were closely related in their business operations and other activities, the Court finds that notice may be imputed to Enron that it was aware of Midland's Proof of Claim based on Enron and ENA's identity of interest between the parties.

Nevertheless, Midland's amendment to the Proof of Claim must still meet the requisite "mistake" factor under Rule 15(c)(3). Although courts in this district have held that the identity of interest exception can be used to satisfy the mistake factor, *see In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.,* 815 F.Supp. 620, 646 (S.D.N.Y.1993) ("Identity of interests has also served as [a] touchstone for determining whether the new party knew

or should have know[n] that 'but for' a mistake in identity, he would have been sued in the first instance.") (quoting *Sounds Express Int'l Ltd. v. American Themes and Tapes, Inc.*, 101 F.R.D. 694, 697 (S.D.N.Y.1984)), courts have subsequently clarified that the exception only applies to the issue of imputed notice, not mistake, *see Levy v. U.S. General Accounting Office*, 1998 WL 193191, at *6, 1998 U.S. Dist. LEXIS 5567, at *18–19 (S.D.N.Y. Apr. 22, 1998) (noting that the identity of interests exception does not relive a party of the need to show mistake) (citing *West v. City of New York*, 1995 WL 75475, at *2, 1995 U.S. Dist. LEXIS 2057, at *6 (S.D.N.Y. Feb. 22, 1995) (holding that the " 'identity of interest' test applies to the issue of notice, not mistake")).

▮▮▮ To establish "mistake" under Rule 15(c)(3), a plaintiff must show either factual mistake (for example, he or she misnamed a party or misidentified the party to wished to sue) or legal mistake (for example, he or she misunderstood the legal requirements of his or her cause of action). *In re Sterling Foster Co.*, 222 F.Supp.2d 216, 261 (E.D.N.Y.2002); *see Heitz v. Braverman*, 1997 WL 13241, at *6, 1997 U.S. Dist. LEXIS 251, at *16–17 (S.D.N.Y. Jan. 15, 1997) (noting that "the Second Circuit has established that an amended complaint adding individual defendants can relate back where the plaintiff has shown either factual mistake or legal mistake"). " 'Mistake' under Rule 15(c)(3) is ... concerned fundamentally with the new party's awareness that failure to join it was error rather than a deliberate strategy.' ... The focus is on the plaintiff's knowledge at the time of the original pleading." *Randall's*, 2002 WL 31496229, at *3, 2002 Bankr.LEXIS 1247, at *8–9 (quoting *Integrated Res.*, 815 F.Supp. at 644). In other words, "[r]elation back usually depends on what the

plaintiff knew about the identity and involvement of the added defendant when he filed the timely pleading." *Id.* at *3.

▮▮▮ Specifically, " '[i]f, at the time of filing his initial complaint, plaintiff knew of the identity and possible role of the person whom plaintiff seeks to add as a defendant, there is no mistake for purposes of the relation back doctrine.' " *Id.* at *3 (quoting *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F.Supp. 979, 987 (E.D.Pa. 1993)). Indeed, in *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir.1994), the Second Circuit noted that where a plaintiff (1) knew of the identities of the defendants and (2) identified the defendants in an exhibit to the original complaint but chose not to name them in the complaint itself, the failure to name them is considered a matter of choice, not mistake. *Cornwell*, 23 F.3d at 705. Here, although Midland was aware of Enron's identity at the time it filed its Proof of Claim and the claim has the Assignment and Assumption Agreement attached as an exhibit whereby paragraph 3 of the agreement references the "parental guaranty," that is, Enron's Guaranty, the Court nevertheless finds that Midland's failure to add Enron is a mistake, that is, actual inadvertence on the part of Midland, not a conscious choice or deliberate strategy by Midland to exclude Enron.

While Midland's amendment relates back to the original Proof of Claim under the first prong of the test for permitting an amendment to a proof of claim, the Court concludes that Midland's amendment should still not be permitted under a similar equitable determination made in finding no excusable neglect below. *See generally Brown*, 159 B.R. at 710, n. 4 ("the equitable analysis applied in cases decided under Rule 7015 is essentially the same analysis that the Supreme Court used to determine what is 'excusable ne-

glect' under Rule 9006(b)(1) for allowing the filing of an untimely claim"). In particular, the Court emphasizes that the Debtors would be unduly prejudiced by possibly opening the floodgates for similar late-filed guaranty claims. Accordingly, Midland's only recourse for permitting the Guaranty claim is showing that its failure to timely file a proof of claim for the Guaranty against Enron was the result of "excusable neglect."

## C. *Excusable Neglect*

Bankruptcy Rule 9006(b)(1) provides that a bankruptcy court in its discretion may accept a late-filed proof of claim where a claimant establishes "excusable neglect." The burden is on the claimant to prove that he or she did not timely file the claim because of excusable neglect. *Andover Togs*, 231 B.R. at 549.

The seminal case interpreting the "excusable neglect" language of Bankruptcy Rule 9006(b)(1) is *Pioneer Inv. Servs. Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In permitting a creditor's late filing under Bankruptcy Rule 9006(b)(1), the Supreme Court explained that Congress, "by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." 507 U.S. at 388, 113 S.Ct. 1489 (quoting, in part, Bankruptcy Rule 9006(b)(1)). The Supreme Court further clarified that whether a claimant's neglect of a deadline is excusable is an equitable determination, taking account of all the relevant circumstances surrounding the claimant's omission. *See id.* at 395, 113 S.Ct. 1489. These equitable considerations include (1) "the danger of prejudice

to the debtor," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith."

The relative weight, however, to be accorded to the factors identified in *Pioneer* requires recognizing that not all factors need to favor the moving party. *See Keene*, 188 B.R. at 909. As one bankruptcy court concluded, "[n]o single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other." *In re 50–Off Stores, Inc.*, 220 B.R. 897, 901 (Bankr.W.D.Tex.1998).

With *Pioneer's* four equitable factors in mind, the Court turns to the facts of this case to determine if Midland's failure to file a timely Proof of Claim was caused by excusable neglect.

### 1. *Danger Of Prejudice To Debtors*

The Court in *In re Keene Corp.*, 188 B.R. 903 (Bankr.S.D.N.Y.1995), noted that while *Pioneer* did not define "prejudice," subsequent cases have weighed a number of considerations in determining prejudice, including (1) "the size of the late claim in relation to the estate," (2) "whether a disclosure statement or plan [of reorganization] has been filed or confirmed with knowledge of the existence of the claim," and (3) "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated." *Keene*, 188 B.R. at 910.

While Midland's Guaranty claim is not substantial in relation to the Debtors' estate and although the claim was filed before the Debtors filed their proposed plan

of reorganization and disclosure statement, the Court nevertheless finds that prejudice to the Debtors is significant here. Specifically, the Court agrees with the Debtors that considering the Debtors might be parties to agreements with guarantees or guarantors of such agreements involving other Debtors, allowing late-filed proof of claims based on such guarantee or guarantor relationships would adversely affect the Debtors' assessment of their liabilities as well as negatively impact their bankruptcy proceedings. The Court, therefore, finds that the prejudice factor weighs in favor of the Debtors.

### 2. Length Of Delay And Its Potential Impact On Judicial Proceedings

The Court finds that the length of delay in filing the Proof of Claim here is substantial, that is, it was filed more than six months after Bar Date. The Court also notes that the Bar Date Order was meant to function as a statute of limitations and effectively exclude such late claims in order to provide the Debtors and their creditors with finality to the claims process and permit the Debtors to make swift distributions under any confirmed plan of reorganization. To find otherwise, that is, outside of the context of excusable neglect, would vitiate the very purpose of the Bar Date Order and would clearly prejudice the Debtors' reorganization process. Thus, the length of delay factor also weighs in favor of the Debtors.

### 3. Reason For Delay, Including Whether It Was Within Reasonable Control Of Movant

While Pioneer recognized that courts are "permitted, where appropriate, to accept late filings caused by inadvertence," a creditor nonetheless must explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect. *Pioneer,* 507 U.S. at 388, 113 S.Ct. 1489. Here, despite Midland's general explanation that it was distracted by extensive negotiations regarding rejection of the Purchase Agreement and assignment and assumption of the Ultramar Agreement prior to filing the Proof of Claim, the Court notes that Midland failed to articulate any genuine reason for the delay in filing the Guaranty claim and, in fact, admits that the late filing "resulted solely from inadvertence." Also, since the Debtors provided Midland with adequate notice of the Bar Date, the Court finds that it was within Midland's control to timely file a proof of claim for the Guaranty against Enron. Accordingly, the Court finds this factor also favors the Debtors.

### 4. Whether Movant Acting In Good Faith

The Court finds that there is no indication in the record that Midland acted in a manner other than in good faith in filing the Proof of Claim. Therefore, this factor favors Midland.

### IV. Conclusion

The Court concludes that while Midland's amendment to the Proof of Claim seeking to add Enron as a debtor and to include the Guaranty claim is permissible under the first prong of the two-prong test for determining whether to permit such amendment, Midland's amendment fails under the second prong of the test because the Debtors might be unduly prejudiced by possibly opening the floodgates for similar late-filed guaranty claims. Furthermore, while Midland acted in good faith, the remaining *Pioneer* factors, that is, danger of prejudice to the Debtors, the length of delay and its impact on the judicial

proceedings, and the reason for the delay, all weigh strongly in favor of the Debtors in not permitting Midland leave to file a late proof of claim against Enron for the Guaranty.

Therefore, for the reasons set forth herein, it is hereby

ORDERED, that the Motion to amend the Proof of Claim against ENA for the Guaranty or to permit leave to file a late proof of claim against Enron for the Guaranty is denied.