Thomas P. Agresti, Judge
In each of the above three cases Quicken Loans, Inc. ("Quicken") has filed a Notice of Withdrawal of Notices of Postpetition Mortgage Fees, Expenses and Charges ("Withdrawal") by which it seeks to withdraw a Notice of Postpetition Mortgage Fees, Expenses, and Charges ("Notice") filed previously in the case pursuant to Fed.R.Bankr.P. 3002.1(c) . Because all three cases present the same issues, they will be addressed collectively in this Order. The Court will begin with a description of the relevant procedural history from each case and then turn to a discussion of the legal issues presented by the Withdrawals.
PROCEDURAL HISTORIES
Dworek: Case No. 16-10705
Quicken filed Claim 1-1 on August 17, 2016, as a secured claim in the amount of $63,754.37, with the security being a mortgage on real property located at 60 McKinstrey Dr., Coolspring, Pa. 15730. On September 12, 2016 Quicken filed a Notice seeking attorney fees of $550, with no explanation as to the services that were provided for such fees. On March 7, 2017 Quicken filed Claim 1-2, as an amendment to Claim 1-1, with a new amount of $64,844.17. On April 6, 2017 Quicken filed a Notice seeking attorney fees of $150 for filing the amended proof of claim.
On September 8, 2017, the Chapter 13 Trustee ("Trustee") filed an Objection to the two Notices. Dworek , Doc. No. 36. The Objection argued that the attorney fees sought in the Notices should be disallowed because they were not explained, because they were for administrative work that did not require the services of an attorney and were thus unreasonable, and because they reflected flat rates. A hearing on this Objection was scheduled for November 8, 2017.
Quicken filed a Response to the Objection on October 19, 2017. Dworek Doc. No. 39. In the Response Quicken provided some detail as to the services that were provided in exchange for the attorney fees being sought in the Notices, though still no actual time records. The Response also acknowledged that the fees had been charged on a flat rate basis, but implicitly *269 argued that there was nothing improper about doing so and that such fees were appropriate.
Following the November 8, 2017, hearing on the Objection, and some time allowed for an attempt at a voluntary resolution, the Court issued a Pretrial Scheduling Order on February 23, 2018. Dworek Doc. No. 46. On May 15, 2018 Quicken filed a Motion for Summary Judgment and supporting brief. Dworek Doc. No. 51. The Trustee filed her Response to the Quicken Motion for Summary Judgment on June 5, 2011, Dworek Doc. No. 66-67, to which, on June 8, 2018, Quicken filed a Reply and a brief, Dworek Doc. No. 68.
An argument on the Motion for Summary Judgment, as well as the final pretrial conference, was scheduled for June 11, 2018, but due to a power outage at the courthouse it was rescheduled for July 17, 2018. In the Order that was issued rescheduling the hearing, the Court also noted that contrary to the Pretrial Discovery Order issued in the case Quicken's exhibits had been received late, Quicken's exhibits were not marked and improperly, and the Parties had not made a good faith effort to stipulate to any facts. The Court also noted that the Reply and brief filed by Quicken were unauthorized and raised a new defense for the first time, and would therefore be stricken without prejudice. Dworek Doc. No. 69. Quicken subsequently filed a Motion for leave to refile the Reply that had been stricken, and the matter was set for the hearing on July 17th.
At the July 17th hearing the Court partially granted Quicken's motion for leave to refile the Reply, but denied the Motion for Summary Judgment, noting that Quicken had failed to properly support its summary judgment motion by reference to appropriate record facts or filings or to otherwise support the reasonableness of the attorney fees it was seeking. Dworek Doc. No. 77. Among other things, the Court at the hearing also raised the issue of whether the attorney fee limitation of 41 P.S. § 406 (part of Pennsylvania's "Act 6 ") should play any role in deciding the Objection to the Notice given that the Parties acknowledgment that no foreclosure action had been started by Quicken prior to the bankruptcy filing.[1] The Parties were directed to submit briefs on the issue by August 13, 2018 and trial was scheduled for September 6, 2018. Id.
On July 27, 2018, the Trustee filed a Motion to Compel seeking to compel Quicken to provide billing records for the attorney fees being sought in the Notice or else be excluded from using any such records at trial. That Motion was scheduled for argument on August 6, 2018. On August 2, 2018, Quicken filed the Withdrawal which is the subject of this Order. Dworek Doc. No. 91. On August 3, 2018, Quicken filed its Response to the Trustee's Motion to Compel. This Response stated that the attorney fee agreement between Quicken and its attorneys, Stern & Eisenberg, PC, was a flat fee, asserting that such fee was in accordance with Federal National Mortgage Association Guidelines ("Guidelines"), *270 a copy of which were attached to the Response.[2] At the August 6th hearing Counsel for Quicken stated that the Notice in this and the other cases were being withdrawn because Quicken had concluded that under Act 6 attorney fees were not recoverable in the current matter.
Jones: Case No. 16-21890
Quicken filed Claim 6-1 on June 8, 2016, as a secured claim in the amount of $161,820.36, with the security being a mortgage on real property located at 520 Sugar Maple Cir., Washington, Pa. 15301. On September 6, 2016, Quicken filed a Notice seeking fees of $1,150 for "Attorney fees" and "Bankruptcy/Proof of claim fees." No further explanation for such fees were given as to the services allegedly provided by Stern & Eisenberg.
On September 5, 2017, the Trustee filed an Objection to the Notice. Jones Doc. No. 35. The Objection argued that the attorney fees sought in the Notice should be disallowed because they were not explained, were for administrative work that did not require the services of an attorney and were thus unreasonable, and because they reflected flat rates. A hearing on this Objection was scheduled for November 8, 2017.
Quicken filed a Response to the Objection on October 11, 2017. Jones Doc. No. 38. In the Response, Quicken provided some additional detail about the services that had been provided (though still no actual time records) and acknowledged that the fees had been charged on a flat rate basis, but implicitly argued that there was nothing improper about seeking payment for such fees.
Following the November 8, 2017 hearing on the Objection, and some time allowed for an attempt at a voluntary resolution, the Court issued a Pretrial Scheduling Order on February 23, 2018. Jones Doc. No. 45. From that point forward the Jones matter tracks with the Dworek matter as described above.
Hojdila: Case No. 16-23542
Quicken filed Claim 4-1 on October 6, 2016, as a secured claim in the amount of $93,490.14, with the security being a mortgage on real property located at 485 Sebring Road, Beaver, Pa. 15009. On November 22, 2016, Quicken filed a Notice seeking attorney fees of $650 for "Plan Review" and "Proof of Claim." No further explanation as to the services that were provided for such fees was provided.
On November 10, 2017, the Trustee filed an Objection to the Notice. Hojdila Doc. No. 35. The Objection argued that the attorney fees sought in the Notice should be disallowed because they were for administrative work that did not require the services of an attorney and were thus unreasonable, and because they reflected flat *271 rates. A hearing on this Objection was scheduled for January 10, 2018.
Quicken filed a Response and Amended Response to the Objection on December 26, 2017 and January 10, 2018. Hojdila Doc. Nos. 38, 39. In those documents Quicken provided some additional detail about the services rendered (though again, no actual time records provided) and acknowledged that the fees had been charged on a flat rate basis, but again implicitly argued that there was nothing improper about seeking fees on that basis.
Following the January 10, 2018, hearing on the Objection, continued to January 30, 2018, and some time allowed for an attempt at a voluntary resolution, the Court issued a Pretrial Scheduling Order on February 23, 2018. Hojdila Doc. No. 45. From that point forward the Hojdila matter tracks with the Dworek matter as described above.
DISCUSSION
The Court has set forth a fairly detailed procedural history of these cases for two reasons. First, to explain why Quicken is not free to simply unilaterally withdraw the Notices at this point in the litigation. Second, to give needed background and context to help explain the Court's concerns about the Withdrawals and its ultimate decision. A discussion of each of these points follows.
Quicken's attempted voluntary dismissal of the Notices
Fed.R.Civ.P. 41 is entitled "Dismissal of Actions", and it deals with both voluntary and involuntary dismissals. Rule 41 is generally made applicable to adversary proceedings in bankruptcy cases pursuant to Fed.R.Bankr.P. 7041 , with one exception not relevant here. Rule 41 is also made applicable to contested matters, unless the Court directs otherwise, pursuant to Fed.R.Bankr.P. 9014(c) . The term "contested matter" is not defined in the Bankruptcy Rules or the Bankruptcy Code , but the Advisory Committee Note to Rule 9014 states that "[w]henever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter." It is therefore clear the dispute between Quicken and the Trustee as to whether Quicken should be permitted to add attorney fees on to its claims against the various debtors in these matters is a contested matter, and dismissal of that matter is therefore governed by Fed.R.Civ.P. 41.
Since the Withdrawals represent a unilateral attempt by Quicken to voluntarily dismiss these contested matters, the relevant provision is Fed.R.Civ. P. 41(a) , which provides:
(a) Voluntary Dismissal.
(1) By the Plaintiff.
(A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
(ii) a stipulation of dismissal signed by all parties who have appeared.
(B) Effect. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.
(2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action *272 may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.
Fed. R. Civ. P. 41(a) .
Of course, since the present contested matters are not adversary proceedings, the terminology of an "answer" in Rule 41(a)(1)(A)(i) does not directly apply. It is proper, however, to apply analogy here. See, e.g., In re Enron Corp. , 298 B.R. 513, 521-22 (Bankr. S.D.N.Y. 2003). When the Court does so it has little difficulty in concluding that the Notices filed by Quicken equate to complaints, making the Objections filed by the Trustees the equivalent of an answer.[3] It is thus apparent that the condition of Rule 41(a)(1)(A)(i) that would allow Quicken to effect a unilateral dismissal is not present. Likewise, the condition of Rule 41(a)(1)(A)(ii) has not been met because no such stipulation has been filed.
Accordingly, the only way that the Notices may be voluntarily withdrawn is by court order, on such terms as the Court considers proper, pursuant to Rule 41(a)(2) . Strictly speaking, Quicken should have filed motions requesting such a Court order, and as such, the Withdrawals could be summarily dismissed for that reason. In order to avoid delay, the Court will treat the Withdrawals as motions seeking approval of a voluntary dismissal of the Notices.
Whether voluntary dismissal of the Notices should be permitted
The primary purpose of Rule 41(a)(2) is to thwart voluntary dismissals by plaintiffs that would result in clear legal prejudice to defendants. Ravenel ex rel. Ravenel v. SmithKline Beecham Corp. , 2013 WL 4223706 *1 (E.D. Pa. August 14, 2013). The decision whether to grant a voluntary dismissal under Rule 41(a)(2) lies within this Court's sound discretion, though it should generally be granted unless it would subject the defendant to plain prejudice beyond the prospect of subsequent litigation. Id. , In re Wellbutrin XL , 268 F.R.D. 539, 543 (E.D. Pa. 2010). Here, as a general matter, the Court sees little risk of legal prejudice to the Trustee if voluntary dismissal is granted. Quicken's attorney conceded at the August 6th hearing that the Withdrawals were filed after Quicken concluded that Act 6 would not permit the attorney fees it is seeking against the debtors. Thus, if dismissal is allowed, there is no likelihood of any subsequent litigation of the Act 6 issue, at least as to these particular debtors, and thus, little risk of any legal prejudice to the Trustee from that quarter. Furthermore, if voluntary dismissal is permitted, the 180-day requirement of Rule 3002-1(c) would be a further bar to any future litigation.
On the other hand, in the Objections the Trustee has also asked for an order to be entered directing Quicken to provide proof that the loan histories have been corrected even if Quicken seeks to withdraw the *273 Notices, and precluding Quicken from assessing the cost of defending the Objections on the debtors. Therefore, in the context of the present cases, dismissal would be legally prejudicial to the Trustee if it were permitted without also addressing those requests for relief.
If a court does decide that dismissal should be allowed, it must further decide whether dismissal should be with or without prejudice, and what "terms and conditions," if any, should be imposed. The first of these questions is a fairly easy one under the circumstances presented. As was indicated above, Quicken's attorney conceded that there is no legal basis for the attorney fees being sought in the Notices because Act 6 does not permit such fees. It is thus clear that any dismissal should be made with prejudice to prevent Quicken from ever attempting to recover these fees in some future litigation. That leaves the question of whether any other terms or conditions should be imposed on a voluntary dismissal.
In order to properly consider that question it is necessary to step back and take a big picture look at everything that has occurred to date in these cases. When the procedural history of the cases is considered, the most noteworthy aspect from the Court's perspective is how heavily these matters have already been litigated, including implementation of full-blown discovery schedules, filing and arguing motions for summary judgment, filing of motions to compel due to Quicken's failure to respond to discovery requests in all cases, and an actual trial dates being set.[4] All of this has eaten up considerable Court time and, presumptively, has been quite expensive for the Parties, all over an issue for which Quicken now concedes there never was any legal support.
It is troubling to the Court that Quicken commenced this litigation in the first place by filing the Notices, and then vigorously pursued it for so long after the Objections were filed, before coming to the realization that Act 6 posed a statutory roadblock to the requested fees being sought in the Notices. Why did Quicken even initially consider seeking attorney fees in these cases when by statute and established case law it clearly was precluded from doing so?
At this point a brief digression may be in order. Effective February 1, 2018, the Undersigned instituted a new policy to conduct an initial review of all new Notices filed pursuant to Fed. R. Bankr.P. 3002.1(c) to determine whether they included sufficient supporting documentation. Under the new policy, if this initial review reveals insufficient support, an order is entered requiring the filing party to supplement the Notice within 21 days or it will be dismissed.[5] The new policy was implemented because of the realization and concern that many such Notices were being filed with little or no supporting documentation, yet were passing through the system without objection, apparently because the amounts being sought in the Notices (typically less than $1000) meant that the legal expense the debtor would incur in challenging them could not be financially justified. By the Court conducting a preliminary screening of Notices, and *274 requiring the filer to provide supplemental supporting information if necessary, it was hoped that the incidence of unwarranted filings would be decreased.
To be frank, when the new policy was implemented the Court's main concern was that in some instances excessive attorney fees were being claimed for relatively routine tasks that should have taken minimal time. See In Re Susanek , 2-14 WO 4960885 (Bankr. W.D.PA Sept. 30, 2014). It was really not on the Court's "radar" that filers might be making claims for attorney fees when they did not even have a legal basis for doing so. The present cases alerted the Court to the fact that there might be such a problem, with some filers seeking attorney fees in cases where they were not entitled to such fees based on the restrictions of Act 6 .
The Court has conducted a brief review, and it appears what happened in the three cases addressed in the present Order is not merely an isolated problem. For example, in the 6-month period prior to the imposition of the new policy, 60 Rule 3002.1 Notices were filed in the Undersigned's cases. In only 14 of those cases had a foreclosure action been initiated before the bankruptcy was filed, but attorney fees were being sought in 40 of the Notices. That would appear to indicate that in 26 cases, creditors sought attorney fees to which they had no legal entitlement. There may have been successful objections filed in some of those cases, but the Court is fairly certain that at least some of those Notices resulted in attorney fees being added to debtor loan obligations despite the Act 6 prohibition, which is also disturbing. The Court is left to wonder about the scope of this issue as to all Western District cases filed within the last several years.[6]
Turning back to the main thread of the discussion, on its face Quicken's filing of the Notices and its continued litigation of the Objection in the face of the Act 6 prohibition seems a clear violation of Fed.R.Bankr.P. 9011(b)(1), which provides that by presenting a claim on behalf of a party, that party's attorney certifies that to the best of the attorney's knowledge, information and belief formed after an inquiry reasonable under the circumstances the claim is warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law, or the establishment of new law. Should not an attorney conducting a reasonable inquiry in advance of filing the Notices have realized that existing law did not support the claim for attorney fees? And despite the long litigation history of these matters, Quicken never made an argument that existing law should be modified or reversed.
Despite the troubling nature of what has occurred, the Court does not believe a voluntary dismissal of the notices should be conditioned on Quicken facing the possibility of Rule 9011 sanctions.
*275 Rule 9011(c)(2)(A) provides that monetary sanctions may not be awarded against a represented party for a violation of Rule 9011(b)(2) . Any such monetary sanction should be imposed against the attorney or firm which filed the offending document. See, generally , Advisory Committee Notes to 1993 Amendments to Fed.R.Civ. P. 11 ("Monetary responsibility for such violations is more properly placed on the party's attorney"). Thus, if a voluntary dismissal is permitted, it will be done with the Court reserving the right to proceed with an order to show cause against Quicken's attorneys pursuant to Rule 9011(c)(1)(B) if it chooses.[7]
An award of attorney fees to the Trustee for the expenses she incurred in these matters seems, at first blush, like another possible condition that should be considered as part of an order approving a voluntary dismissal of the Notices. Again, however, upon closer consideration there are reasons cutting against such a result. For one thing, the Trustee has not asked for attorney fees. At the August 6th hearing she made a verbal representation that she did not oppose the Withdrawals, and in doing so she did not condition such position on being awarded any attorney fees as part of the dismissal. Additionally, there is a considerable body of case law to the effect that if a voluntary dismissal is granted with prejudice the court should not also award attorney fees, either because it lacks the power to do so, or because it should not do so for prudential reasons. See , Wright & Miller, Federal Practice and Procedure , Section 2366 at Footnote 16 (3d Ed. 2018). Some cases approving a voluntary dismissal with prejudice hold that attorneys fees can be awarded as part of the dismissal order, but only in exceptional circumstances. In this instance, because it has already concluded that any voluntary dismissal should be with prejudice, and because the Trustee has not requested fees, the Court reluctantly does not believe any attorney fees should be awarded as part of a dismissal order under Rule 41(a)(2) .
A final point of consideration for terms or conditions to be imposed as part of an order approving a voluntary dismissal of the Notices is the requirement that Quicken provide proof that the loan histories have been corrected to eliminate any reference to the attorney fees that are the subject of the Notices, that Quicken provide a complete loan history since the inception of the loans, and that Quicken not attempt to recover any of its expenses related to this litigation from the debtors. As noted previously, relief of this type was requested by the Trustee in the Objections, and was reiterated by her at the August 6th hearing as a condition of her non-opposition to the voluntary dismissal of the Notices by Quicken. These terms and conditions appear to be eminently reasonable to the Court. Such conditions would impose little burden on Quicken, and in fact, Quicken's attorney agreed to those conditions when the Trustee stated that her non-opposition to the withdrawals were contingent on them.
CONCLUSION
Upon consideration of all relevant factors as discussed above, and on the record at the August 6th hearing, the Court concludes that it should approve a voluntary dismissal of the Notices by Quicken. Such a dismissal will be with prejudice, and on the terms and conditions as noted above.
AND NOW , this 22nd day of August, 2018 , it is ORDERED, ADJUDGED and DECREED that, *276 (1) The Withdrawals filed by Quicken, deemed to be motions seeking leave of Court for the voluntary dismissal of the Notices filed in the three cases pursuant to Fed.R.Civ.P. 41(a)(2) , are GRANTED , with such voluntary dismissal for each Notice to be with prejudice, and to become effective as of the date that Quicken files a certification that it has complied with Paragraph 2 of this Order.
(2) On or before September 21, 2018 , Quicken shall file a certification in each of these three cases stating that it has provided an Affidavit to the Trustee and the respective debtors to the effect that the loan history in each case has been corrected to eliminate any reference to the attorney fees that are the subject of the particular Notice, that it will not seek to impose any of its expenses related to this litigation on the debtors, and that it has provided the Trustee with a complete loan history from the inception of the loan to the date of this Order.
(3) The trial scheduled for September 6, 2018, is CANCELLED and all further pretrial procedure in these matters is STAYED pending Quicken's compliance with Paragraph 2 of this Order, and shall be deemed concluded upon such compliance.
(4) Despite the approval of a voluntary dismissal of the Notices by Quicken, the Court reserves the right to initiate, in its discretion, a sanction action against Quicken's attorneys pursuant to Fed.R.Bankr.P. 9011(c)(1)(B) for any conduct by the said attorneys concerning or related to the filing of the Notices, the Objections and any other matters related to these proceedings.

Act 6 refers to the Act of January 30, 1974, P.L. 13, No. 6, officially titled as the Loan Interest and Protection Law . Act 6 is codified at 41 P.S. §§ 101 et seq . Of particular relevance here is 41 P.S. § 406(3) , which provides that for residential mortgages no attorney fees may be charged by the mortgagee for legal expense incurred prior to commencement of "foreclosure or other legal action." Among the cases holding that this provision acts to prevent postpetition attorney fees from being charged by a creditor in a bankruptcy case that was filed before a foreclosure action had started, see , In re Graboyes , 223 Fed. Appx. 112 (3d Cir. 2007), In re DeTone , 262 B.R. 359 (Bankr. W.D. Pa. 2001), and In re Stanley , 2018 WL 2979852 (Bankr. M.D. Pa., June 12, 2018).

Without at this time deciding whether a flat fee would ever be permissible in the context of a Rule 3002.1 Notice in the face of the usual lodestar methodology, or whether the Guidelines should be recognized as in any way authoritative, the Court notes that the Guidelines themselves provide that the fees stated therein are the "maximum" to be allowed. This reference clearly indicates that some inquiry as to reasonableness is required, even if the Guidelines were to be considered. Quicken, as the proponent of the Notices, bears the evidentiary burden of proving reasonableness. See , Fed.R.Bankr.P. 3002.1(d) . Quicken's failure to provide any evidence as to the reasonableness of the fees would appear to doom the Notices even if the Guidelines were to be considered. Additionally, it is interesting to note that the Guidelines provide a "$0" maximum fee for a notice of appearance, while the Notice in the present case seeks $50 for that service. So, despite Quicken's assertions to the contrary, the "standard" set by the Guidelines is not met, at least for that specific service.

An alternative view by analogy might have it that the Objections filed by the Trustee are the complaints, which would make the Responses filed by Quicken the answers. Such an alternative view does not help Quicken because it would then be put in the position of a defendant, and as such have no standing for seeking to have the contested matters unilaterally and voluntarily dismissed pursuant to Rule 41(a).

A separate concern is the quality of the legal work during the course of the litigation, just in terms of complying with basic procedural requirements. For example, in the Court's view, the Motions for Summary Judgment filed on behalf of Quicken by its attorneys were grossly deficient in basic evidentiary support as was Quicken's failure to meet even the basic requirements of the Pretrial Scheduling Order as it pertained to the filing of its pretrial narrative statements and exhibits.

For an example of such an order, see Doc. No. 35 In re Kimberly E. Watson , Case No. 17-23555-TPA (February 23, 2018).

The Court has not had the time or resources to conduct a thorough review. However, to put the issue in some perspective, it may be noted that in the 3-year period from August 1, 2015 through August 1, 2018, a CM/ECF search identifies 1,353 Rule 3002-1 Notices were filed in bankruptcy cases in the Western District. Assuming the same approximate ratio of these filings involved claims for attorneys fees in the group of the Undersigned's cases filed in the six months preceding the new policy (i.e., 2/3), that would mean roughly 900 Notices seeking attorneys fees were filed. Assuming roughly the same rate of non-foreclosures as in the six month group (i.e., 3/4), that would mean approximately 675 cases had filings where it is possible that attorney fees were improperly allowed. Again, the Court is not declaring that this is in fact what happened since it is impossible to know without conducting a detailed, individual review of the Notices, but it does point out the potential magnitude of the problem.

The alternative of a motion for sanctions by the Trustee pursuant to Rule 9011(c)(1)(A) appears unavailable if voluntary dismissal is allowed because the Notices will then have been withdrawn and the 21 day requirement in that provision of the Rule could not be met.